Parker, C. J.,
delivered the opinion of the Court. This process was served on Ephraim and Larkin Snow, who were partners in a mercantile house transacting business in the state of North Carolina. The other partners in the same house were named in the writ, but not being within the commonwealth, no service was made upon them. It appears by the answers of L. Snow, that the house, of which he was a member, was indebted to Danforth, at the time of the service of the writ, for goods purchased of him for the store oi place of their business in North Carolina, and that no stipulation or *251 agreement was made, at the time of the purchase or afterwards, relative to the mode of payment for the goods, or the place at which payment was to be made ; that the purchase was made without the knowledge of the partners here; and that payment was_ expected to be made by remittances from the partners in North Carolina.
On this part of the case the general question arises, whether a mercantile house, consisting of several members, some of whom are within the commonwealth, and others * are [ * 302 ] without, transacting the business of the company in another state, can be held chargeable in this process, as trustees of those to whom they are indebted within this state.
The question is a difficult one, and does not seem to have come directly before the Court until this time. On the one hand, great inconveniences may result from holding them so liable, when the state of the funds may not be known to the partners here; and when such engagements may have been entered into, or such liabilities incurred, by the partners abroad, as might subject them to the risk of paying the debt, twice. And on the other hand, as a suit might be maintained here against the house, notwithstanding the absence of some of the partners, by the person to whom they are indebted, it would seem contrary to the intention of the legislature, in establishing the trustee process, that the creditors of such persons should not be able to attach the same funds, which they themselves might command by a suit at law. And cases might often arise, where insolvent persons' would be able to collect debts to a large amount, and appropriate them to their own use, if the trustee process cannot be applied, where all the partners of a house, which may be indebted, do not reside within the state.
It has been held in one case (1), that where two persons are indebted upon a joint contract, they must both be summoned as trustees ; because one of them, may have paid the debt, without the knowledge of the other. But in that case, both the joint debtors were probably within the state, and might have been summoned. •And this would be analogous to a suit against them by him to whom they were indebted, which must be against both, and service must be made upon both, if within the jurisdiction.
But where one or more of the joint debtors are here, and others of them are beyond the reach of process, the suit may be maintained, if the facts appear upon the return * of the [ * 303 ] writ. The analogy holds likewise in the question now before us. Danforth might have sued all the partners here ; a service upon those dwelling within the commonwealth being sufficient, *252 if it appeared on the writ that the others had no domicil here. So also we think they may be summoned as trustees of Danforth, and charged as such, if-it appears they are indebted. And we think (hat the rights of creditors may be secured, without any eventual preju dice to the trustees. For in all such cases, if it appears by the answers that time is wanted to ascertain the condition of the funds, or the liability of the partners abroad on account of any acceptance, or any engagement they may have entered into, or any suit brought against them, the process will always be stayed until full information can be obtained. Nor is there any doubt, that foreign tribunals will so far respect any judgment, which may be rendered here, as to relieve the partners abroad, in case they should be molested on account of such debt, after it shall have been disposed of according to the laws here.
This does not militate with the decision of the case of Kidder & Al. vs. Packard & Al. (2), which was decided upon its own cir cumstances; one of the most material of which was, that the money received was to be accounted for at Havana, and the liability was contracted with a view to the agency of a partner in a foreign country, and an expectation that the debt would be negotiated by him. In that case, too, it did not appear that Gowen, the foreign partner, had any notice of the suit, or any opportunity to show whether the funds had been disposed of according to the direction of Butters, who deposited the money with him.
There is a difference also between the case of a partner residing in a foreign country, out of the jurisdiction of the United States, and that of one who lives in some other of the states. For with respect to the latter, our constitution requires that the judgment of this Court, to a certain extent, should be respected ; and [ * 304 ] it was not known, * in the case just alluded to, that in the courts at Havana it would be respected at all.
In the case of Hull vs. Blake (3), it was determined that a judg ment of an inferior court in the state of Georgia against the defendant in the suit here, as garnishee of the payee of a negotiable promissory note, was a legal bar to an action by an endorsee, who became such before the commencement of process in Georgia’; and this, because such was understood to be the law of that state, where the contract was made. That was a very strong case of the exercise of comity; for by the laws of our own state, the promisor in a negotiable note is not liable to a trustee process. We may expect that a like comity will be shown by the courts of other states towards the judgments of our courts; certainly in a case like the present, *253 where the same facts would probably be the foundation of a similar ¡udgment in any of the states.
Upon the general question, therefore, we adopt the conclusion, that it is no objection to the process, that all the partners in a mercantile house are not summoned; provided it appears that those omitted live without the state, so that process could not be served upon them. But it is to be understood that, when the facts stated in the answers require it, time will be given for notice to the absent partners, and for such further disclosure from those who are present, as may arise from correspondence or communication with those abroad, in order that the actual state of the concern may be known, before judgment is rendered. In the present case such opportunity has been given, and we have regularly before us all the facts necessary to be known, in order that a correct judgment may be rendered.
It would seem, by the answers, that the partners of the house, residing in North Carolina, had accepted a bill drawn by Danforth in favor of Gilmore if Aiken, for the whole amoúnt of the debt, before they had any knowledge of the existence of the trustee process here. And if *the fact were so, then, [ *305 ] according to the principles before stated, the persons summoned should be discharged.
But it xvas suggested that this bill was drawn with a knowledge on the part of Danforth, and of one of the drawees, that the trustee process had been servéd upon the partners residing here, and with a view to avoid the effect of that process; also, that the bill was accepted by the partners in North Carolina, with full knowledge of the trustee process; so that the drawing and acceptance of the bill was fraudulent against the plaintiffs, and ought not to avail. As a bill drawn upon the house of Child if Co., and accepted here by the Snows after the service upon them, would not protect them against a judgment against them, as trustees, so it was contended, that the acceptance by the partners abroad, with a full knowledge of the circumstances here, ought not to have any greater effect.
To ascertain the facts on this point, an issue to the country was ordered, conformably to the provisions of the late statute; and it appears by the verdict on this issue, that both the payees of the bill and the acceptors had full knowledge at the time it xx'as drawn and accepted, that the trustee process had been served upon the partners here. This being the case, the acceptance must be considered voluntary, and with a view to intercept the plaintiffs’ rights, which liad accrued by virtue of the process; and it ought not to avail against it.
Nor does the pretended payment of the bill, by a note given in *254 the name of the firm to Gilmore &f Aiken, alter the case; as that must be considered only as an attempt to make more effectual the contrivance to avoid the effect of the plaintiffs’ suit. If the trustees and their partners should be held answerable on that note, it is a liability of their own seeking, assumed for the purpose of securing a friend out of funds which had been before appropriated by law t > the security of the plaintiffs; and they must abide the consequences. But the case shows that they have an indemnity from [ * 306 ] Gilmore &f Aiken; and if that * should fail them, it will be the consequence of their own interference.
The result is, that Larkin Snow and Ephraim Snow are adjudged trustees of Danforth, as set forth in the writ.

 6 Mass Pep. 60, Jewett vs. Bacon.

 12 Mass. Rep. 80.

 13 Mass. Rep. 153