## Case No. 9,586.

### MILLER v. O'BRIEN.

[9 Blatchf. 270;[1]  9 N. B. R. 26;  21 Pittsb. Leg. J. 82.]

Circuit Court, S. D. New York.  Dec. 30, 1871.

BANKRUPTCY—SALE BY SHERIFF — NOTICE — SEIZURE UNDER PRIOR ATTACHMENT—RIGHTS OF ASSIGNEE.

1. A sheriff who, after proceedings in bankruptcy are commenced, wherein an assignee is appointed, levies an execution upon, and sells, property which was of the bankrupt, is liable to the assignee for the proceeds of such property, although he pays such proceeds to the execution creditor, before receiving actual notice of the bankruptcy.

[Cited in Re Grinnell, Case No. 5,830; Beecher v. Gillespie, Id. 1,224; Conner v. Long, 104 U. S. 241.]

2. It makes no difference, that, before the proceedings in bankruptcy were instituted, the sheriff seized, under an attachment in the suit, in which the execution was afterwards issued, the property in question, and held it to be levied on in case execution should issue, or sold it by order of court, and held its proceeds for the same purpose.

3. The operation of the bankruptcy act [of 1867 (14 Stat. 517)] dissolved the attachment, and the title of the assignee vested as of the time of the commencement of the proceedings in bankruptcy.

[Cited in Hatfield v. Moller. 4 Fed. 719; Olney v. Tanner, 10 Fed. 108.]

[This was an action by Elias N. Miller, assignee in bankruptcy, against James O'Brien, sheriff. The case is heard on a demurrer.]

Aaron P. Whitehead, for plaintiff.

Edmund Randolph Robinson and Aaron J. Vanderpoel, for defendant.

WOODRUFF, Circuit Judge. Reduced to its simplest form, the question raised by the demurrer herein is, whether a sheriff, who, after the proceedings are commenced in bankruptcy wherein an assignee is appointed, levies an execution upon and sells property which was of the bankrupt. is liable to the assignee, notwithstanding he pays the proceeds of sale to the creditors before he receives actual notice of the bankruptcy.

It is true, that, in the discussion of the subject on the part of the defendant, some importance was given to the circumstances, that the property had been attached by the sheriff a few days before the proceedings in bankruptcy were instituted, and, that, by order of court, the property seized was sold as perishable, and the proceeds were held by the sheriff in lieu of the property, to abide the event of the suit, and to be levied upon if judgment was obtained and execution issued. But, it is quite clear, that, as between the

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

assignee in bankruptcy and the sheriff, these circumstances are not material. The statute, in the most explicit terms (section 14), declares the attachment dissolved. In like explicit terms, it declares (section 14) that the assignment to the assignee shall relate back to the commencement of the proceedings in bankruptcy, and that the title to all the bankrupt's estate shall vest in the assignee. This can only mean, that the title of the assignee shall be vested with like legal effect as if the assignment had been executed at the commencement of the proceedings. The sale of the property as perishable, assuming that it was justified by the order of the state court, had no effect except to substitute; in the hands of the sheriff, the proceeds of sale in the place of the property seized. It gave the creditor no greater right, and it in no wise enlarged the power or duty of the sheriff.

When, therefore, by operation of law, the attachment was dissolved, the title of the assignee in bankruptcy was perfect, and the sheriff was liable to pay over the proceeds of the property to him. The sheriff had ceased to have any claim or right to withhold them. Unless, then, he is protected by the issue and levy of the execution, and the payment of the money to the execution creditors, before he was actually notified of the bankruptcy, he is still liable, and the demurrer herein must be overruled.

The question is an important one, but not because it involves any conflict between the courts of the state and the federal courts. The law is the same in both courts. The paramount law having dissolved an attachment, although valid and operative when issued, the relinquishment of the property to the assignee in whom the property was vested, is in no derogation of the authority of the state court, but a legal duty recognized in all tribunals. And so, when an execution was issued, if the property was no longer liable to levy for the satisfaction of the judgment, it is no matter of conflict between the one court or the other, which of them is called upon to recognize or administer the law. The question is important, however, because the construction and effect of the bankrupt act, contended for by the plaintiff, may operate very harshly upon sheriffs and like ministerial officers, and it accords with our sense of justice to say, that they ought not to be held liable for their acts in the execution of process, done in good faith, without actual notice of any proceedings in bankruptcy against the debtor. But the same may be said of private persons dealing, in good faith, and without notice, with the debtor, pending the proceedings, an example of which was considered by Mr. Justice Sharswood in Mays v. Manufacturers' Nat. Bank of Philadelphia [64 Pa. St. 74]. I shall not discuss the question at length. I am wholly unable to withdraw the question, as it is presented under the bankrupt law of the United States, from the reasoning and the principles upon which the same question was settled in England, under the bankrupt law of that country. It was there settled, after full and repeated discussion, in several cases, and finally in the house of lords.

By operation of law, the money received by the sheriff was the money of the present plaintiff, whether the sheriff knew it or not; and in that statement lies the whole of the plaintiff's case. All the arguments founded in the duty of the sheriff to execute process, in the hardship of holding him to take the hazard of the title to property which he applies to executions in his hands, and in various other considerations, which were urged upon me with great ability on the argument, are most fully considered in the English cases to which I have referred. Balme v. Hutton, 9 Bing. 471; Garland v. Carlisle, 10 Bing. 452; Id. (in house of lords) 4 Bing. N. C. 7, 4 Clark & F. 693; and numerous cases cited and commented upon in those cases. On principle, those cases seem to me to have been correctly decided, while it at the same time seems possible to guard against fraud in the conduct of the bankrupt and his creditors pending the proceedings, by some provision in the law which shall not necessarily operate with such hardship upon innocent parties acting in good faith. The demurrer must be overruled, with leave to withdraw the demurrer and plead, on the usual terms.