GEORGE D. LAMONT *v.* RICHARD T. CHESHIRE.

(GENERAL TERM, FOURTH DEPARTMENT, MARCH, 1872.)

Whether that clause of section 132 of the Code, which declares a grantee and incumbrancer whose conveyance or incumbrance is recorded, after filing a *lis pendens*, a subsequent purchaser or incumbrancer, applies to a *lis pendens* filed in case of an attachment, doubted. (Per MULLIN, P. J.)

And *quere*, whether the application of the clause is not limited to actions of foreclosure. (Id.)

Possession of real property is notice, to a purchaser at execution sale upon

Lamont *v.* Cheshire.

judgment in an action where such property is attached and a *lis pendens* filed, of the possessor's title.

The implied notice of title by possession has the same effect, in such case, as in the case of a conveyance.

In cases where an attachment is issued, sale of the attached property under execution upon judgment in the action confers no greater title to it than the debtor had at the time the judgment was docketed.

And (per MULLIN, P. J.) a special execution should be issued in attachment cases, directing the sale of the debtor's interest in the attached property as of the day of the levy of the attachment.

The clause of section 132 (Code), by which subsequent purchasers and incumbrancers are bound by all proceedings in the action taken after the filing of the *lis pendens*, to the same extent as if they were parties to the action, is not applicable to attachment cases. (Per MULLIN, P. J.)

THIS was a motion by the defendant for a new trial upon a case and exceptions ordered to be heard in the first instance at the General Term. The facts are stated in the opinion.

*L. F. Bowen*, for the defendant.

*T. E. Elsworth*, for the plaintiff.

Present—MULLIN, P. J. ; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. On the 22d June, 1859, John S. Harp became seized in fee of the premises described in the complaint.

On the 19th October, 1859, David Harp procured an attachment to be issued, in due form of law, against said John S. Harp as a non-resident upon an alleged indebtedness, theretofore accrued, of $300 and interest. On the same day the sheriff of Niagara county, in which said lands were situated, by virtue of said attachment seized said land.

On the 31st January, 1860, judgment was rendered in the action in behalf of said David Harp for $383.14 damages and costs.

On the same 19th October, 1859, the same sheriff attached the same real estate upon an attachment, issued in due form of law, against said John S. Harp in favor of Hiram Dennison for the sum of $1,118.87. Judgment was entered in the

said action on the 31st January, 1860, for $1,237.94 damages and costs.

Notices of *lis pendens* were filed in these actions on the 26th October, 1859, in the office of the clerk of Niagara county.

On the 16th November, 1859, George W. Smith procured an attachment, in due form of law, against the property of said John S. Harp for the sum of $2,616.58; and on the same day the sheriff, by virtue thereof, attached the same land.

On the 31st January, 1860, judgment was recovered in the action in favor of said Smith for the sum of $2,757.45 damages and costs.

On the 17th November, 1859, a notice of *lis pendens* was duly filed in the office of the clerk of Niagara county.

On the 10th February, 1860, executions issued on said three judgments to the sheriff of the same county. These executions commanded the sheriff to sell the real estate within his county belonging to said John S. Harp on the 31st January, 1860, or at any time subsequent.

On the 27th March, 1860, the sheriff sold said lands, by virtue of said executions, to the plaintiffs therein for the sum of $100. A certificate of said sale, signed by said sheriff, was recorded in the clerk's office of said county on the 21st May, 1860.

On the 17th September, 1859, the said John S. Harp conveyed said lands to the defendant in this action by warrantee deed in fee simple; which deed was duly acknowledged on the same day, and recorded on the 14th November, 1859. The consideration for said conveyance was the sum of $3,500. The defendant went into possession of said land upon the delivery of said deed, and has ever since remained in possession thereof.

The defendant, after he acquired title to said land, redeemed the same from the sale made by said sheriff; and thereupon executions were again issued on said judgment, and the sheriff again sold said premises, and the same were purchased by the plaintiff for the sum of $1,000.

· The sheriff gave him a certificate of such sale, and the same was recorded on the 22d August, 1861.

On the 27th August, 1863, the sheriff executed a deed of said premises, in pursuance of said last mentioned sale, to said plaintiff, which was duly acknowledged and recorded on the 17th September, 1863.

The plaintiff brought this action to recover possession of said premises from the defendant.

On proof of the foregoing facts the court ordered a verdict in favor of the plaintiff, and directed the motion for a new trial to be heard in first instance at the General Term.

The defendant's title to the premises in question was acquired on the 17th September, 1859, which was nearly a month prior to the levy on the attachments under which the plaintiff acquired title. This would be conclusive of the defendant's right to the land were it not for sections 231, 232 and 132 of the Code.

Section 231 provides that the attachment shall require the sheriff to attach and safely keep all the property of the defendant within his county, or so much as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses.

Section 232 requires the sheriff to proceed upon the attachment in all respects in the manner required by law in attachments against absent debtors.

The attaching creditor's lien dates only from the seizure by the sheriff.

Section 132 of the Code provides that whenever a warrant of attachment shall be issued pursuant to its provisions, or at any time afterward, the plaintiff may file with the clerk of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action and the description of the property; * * * and from the time of filing only shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed

Lamont v. Cheshire.

or subsequently recorded shall be deemed a subsequent pur-
chaser or incumbrancer, and shall be bound by all the pro-
ceedings taken after the filing of such notice, to the same
extent as if he were made a party to the action.

The plaintiff insists that, as the defendant's deed was not
recorded until about a month after filing the notices of
*lis pendens* in two of the actions, he is, as to the plaintiff's
attachment and proceedings subsequent thereto, a subsequent
purchaser, and that the defendant's title to the real estate
was swept away by the sale and conveyance to the plaintiff
by the sheriff.

If such is the operation of the provisions of the Code to
which reference has been made, if the rights of a *bona fide*
purchaser, who has paid the full value of the land purchased,
are rendered subordinate to the lien of a creditor that does
not attach to the property until after the purchaser has
acquired his title and gone into possession, the law must be
pronounced an excessively severe one, and the condition of
the purchaser an exceedingly hard one. But if the legisla-
ture has so provided, their will, not that of the judges, must
have its way. *Fiat lex (non justitia) ruat Cœlum.*

If the section under consideration is to receive the con-
struction that is put upon it by the plaintiff's counsel, I do
not see how *bona fide* purchasers who, for any cause, are
unable to record their deeds before attachments are issued
and notices of the pendency of suits filed, are to avoid the
loss of the purchase-money paid, if their grantors are owing
debts that are due.

If the purchaser lives ten miles from the clerk's office, if
the messenger sent with the deed to procure it to be recorded
is taken sick or injured by the way, if the deed is given in
the evening, and the deed is presented to the clerk for record-
ing ten minutes after the opening of the office the following
day, and an attachment has been obtained, and notice of *lis
pendens* filed in the mean time, the attaching creditor acquires
a preference, and the purchaser's title is subordinate to the
lien of the attaching creditor. Could a more successful way

Lamont *v.* Cheshire.

" *to improve gentlemen out of their estates* " be devised than
is thus afforded?

The owner of land who is in debt can find no easier way
to pay them than to sell it, obtain his pay, and then induce
the creditors to attach the land before the purchaser's deed
can be recorded, and thus appropriate the land to the pay-
ment of his debts while he revels on the purchase-money.

If any reasonable construction could be given to section
132 that will prevent this injustice, and close the door against
the fraud which it invites and protects, it should be given. I
am quite sure the legislature never intended to work out any
such mischief.

Prior to 1823 all persons were charged with notice of the
pendency of actions affecting real property; and any rights
acquired in land after the commencement of an action affect-
ing the title were subordinate to those of the plaintiff's in such
action; and this, although the purchaser may never have
heard of the suit.

To remedy this injustice, the legislature of this State, in
1823, by chap. 213, § 11, of the Laws of that year, provided
that, to charge subsequent purchasers with notice of the pen-
dency of an action in equity affecting the title to land, the
plaintiff must file in the clerk's office of the county in which
the lands to be affected lay a notice in writing, containing a
description of the lands, &c. &c.

After such a notice was filed, every person acquiring any
title to or interest in the lands described in the notice took
such title or interest in subordination to the rights of the
plaintiff, and they were charged with knowledge of the pro-
ceedings, and with the decree in the action.

If a defendant could, after suit brought affecting the title
to land, convey the same, and thereby prevent the plaintiff
from obtaining any benefit of his suit, litigation would be
either interminable or worthless.

As it would be impossible to ascertain the persons who
might be tempted to deprive a plaintiff of the benefit of his
suit, no injunction could be obtained to restrain them from

committing the wrong; hence a notice that should bind all persons was indispensable.

An attachment against the real estate of a debtor would be practically valueless if the law did not furnish some means for preventing the debtor from selling or incumbering it; hence the necessity of amending section 132 of the Code in 1857, so as to provide for notice of the pendency of the action in which the attachment was obtained.

But the necessity of that clause in the section that provides that every person whose conveyance or incumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or incumbrancer is not perceived when applied to attachment cases; and so unnecessary and unjust is it, if so applied, that I entertain very serious doubts whether this clause was designed to apply to attachment cases.

In cases of foreclosure of mortgages great delay and annoyance were occasioned by the neglect of the grantees of the mortgagor to put their conveyances on record until after judgment of foreclosure.   Being put on record before sale, the plaintiff was obliged to amend by bringing in new parties, and virtually going through a second litigation.

It was to remedy this mischief the clause in question was enacted, and for that purpose it is appropriate and effective. It would be very convenient for sheriffs, in searching for property to levy upon by an attachment, to be informed of all pretended liens on and conveyances of the lands of the debtor; but so would it be in the case of executions.   Yet the law does not require grantees of the judgment debtor, nor his creditors by judgment or otherwise, to furnish any evidence of such grants or liens.

It would seem to be more necessary in the case of judgments than in the cases of attachments, as in the former case a transfer of title is to be made; in the latter, only a lien acquired.

It is not necessary to the decision of this case that we should go the length of holding that the clause of section 132, defining who are subsequent purchasers and incumbrancers,

Lamont *v.* Cheshire.

should be limited to cases of foreclosure. There is another principle which, if applicable to the case, is decisive of it in favor of the defendant.

On the trial, the defendant proved that, upon the execution and delivery of the deed from John S. Harp to him of the premises in question, and upon payment of the purchase-money, he took possession of the premises so conveyed and has ever since claimed to hold and own the same under said deed.

His deed bears date the 17th September, 1859; the attachment was levied on the 17th November of the same year. When the levy was made, the defendant was in possession of the premises, and that possession was notice to the plaintiff and all other persons, not only of his possession but of the title under which he occupied. (4 Abbott's Dig., title, Recording Deeds, §§ 106, 107, 108; 6 id., § 1.

If the plaintiff claimed under a subsequently recorded deed, there would be no doubt but that the defendant's possession was sufficient notice of the defendant's prior deed, to deprive the plaintiff of any advantage arising from having his deed first recorded.

I am unable to discover any distinction between that case and that of a creditor attaching the land of his debtor after notice of a prior conveyance to a *bona fide* purchaser for value paid. If the equities could be measured, I apprehend that of the attaching creditor would be the least.

The creditor seizes the interest of the debtor, whatever it may be, and he obtains no greater interest, as a general proposition, than the debtor has in the property, and could not, in any case, did not a statute afford him the means of overriding the interests of some prior purchaser or incumbrancer.

I do not find that this question has ever been decided or even considered in this State, and for the reason, probably, that until the amendment of section 132 of the Code, requiring notice of *lis pendens* to be filed in attachment cases, the question could have arisen.

In Massachusetts, however, attachments have been long in

use, and the precise point now under consideration has been repeatedly decided.

In that State, deeds are required to be recorded, and when there are two or more conveyances of the same land, the one first recorded obtains the preference over the unrecorded ones. (*Farnsworth* v. *Child,* 4 Mass., 637.)

The court, in order to protect innocent purchasers against fraud, held that notice to the subsequent grantee of the unrecorded conveyance, deprived him of the benefit the statute gave him, by reason of having his deed first recorded. And possession by the first grantee was notice to the subsequent grantee, sufficient to prevent the latter from obtaining a priority by recording his conveyance. (*Farnsworth* v. *Child, supra; Davis* v. *Blunt,* 6 Mass., 487.)

It will be seen that the law in regard to recording deeds, and what constitutes notice to subsequent purchasers of prior conveyance of the same land, are identical with our own.

In *Prescott* v. *Heard* (10 Mass., 60), it was held that when a judgment creditor had notice of an alienation of his debtor's land by a deed unregistered, and of long continued possession under it, yet caused the land embraced in such deed to be sold to satisfy his judgment, he obtained no title to the land through such sale.

The precise point we are considering was decided in *Priest* v. *Rice* (1 Pick., 164). The action was in the nature of ejectment to obtain possession of certain premises that plaintiff had purchased of one Hapgood. The deed was dated the 11th December, 1820, and recorded on the 28th of the same month.

On the 18th December, the defendant caused the land to be attached, and the action was prosecuted to judgment and execution levied on the land within the time required by the statute.

On the trial the plaintiff offered to prove that at the time the defendant obtained the attachment, and when it was levied, he knew of the conveyance to plaintiff. This evidence was objected to by the defendant but received.

The jury were instructed that if the defendant, when his attachment was issued and levied, knew of the conveyance to the plaintiff, they should find a verdict for the plaintiff. They did so find.

The defendant moved for a new trial, on the ground that the evidence, so as aforesaid offered on the part of the plaintiff and received, was incompetent. The motion was denied.

PARKER, C. J., delivering the opinion of the court, says: The effect of a conveyance actually made and delivered, and known to be so by a creditor, is the same under the construction that has been given to the statute in relation to such creditor as it would be in relation to a second purchaser under like circumstances. He then proceeds to say that the court has in several cases held the creditor to stand on the same footing with a second purchaser, as to the effect of notice of a prior conveyance. He then says the reason is the same in both cases, for if a creditor whose debt is due will stand by and suffer his debtor to sell his land and recover the value of it from one who knows not of his claim or of his intention to bring an action upon it, and will afterward attach the same land, there is a constructive fraud upon the purchaser which ought not to prejudice his title. The execution and delivery of the deed completes the transfer from the grantor to the grantee. The registry is to give notice, that others may not be prejudiced; actual notice proved is to the person affected by it as useful, and ought to be attended with the same consequence as public notice in the registry, and implied notice arising from possession under the deed is as effectual as actual notice.

The same point was decided in *Chamberlain* v. *Thompson* (10 Conn., 243).

Deeming these decisions, of so learned and able courts as the Supreme Courts of Massachusetts and Connecticut, conclusive, I will discuss the question no further.

There are other questions argued by counsel which I shall briefly consider. The defendant's counsel insists, that as the sheriff derived his power to sell the land from the executions

delivered to him on the judgments in the attachment cases, and as they directed him to sell the interest that Harp had in the land in question on the 31st January, 1860, the day on which the judgments were docketed, the plaintiff, as purchaser, acquired no title to or interest in the lands, as of any day anterior thereto; and as that day was long after the recording of defendant's deed, the plaintiff acquired no title to or interest in the land under such sale, or the deed given in pursuance of it.

The Code does not provide any mode of selling real estate seized under attachment. The creditor has but two ways to perfect his lien: One is by sale on execution under the Revised Statutes, the other in the manner provided for the sale of real estate by the same statutes in proceedings against absconding, concealed and non-resident debtors.

By section 237 of the Code, the sheriff is required, in order to satisfy any balance that may remain due to the attaching creditor after applying the proceeds of perishable property that has been attached and sold, to sell under the execution so much of the attached property as may be necessary, &c. As no other execution is provided for, the ordinary execution that issues on a judgment must be the one intended. By that the sheriff is required to sell the interest which the judgment debtor had in real estate on the day of docketing the judgment, or at any time subsequent. The sheriff has no authority to sell except such as is derived from his process.

As the judgment was docketed on the 31st January, 1860, and the attachment levied on the 18th November, 1859, it follows that the plaintiff acquired by his purchase no interest in the land of a day earlier than the 31st January.

It would seem that the legislature must have intended that a special execution authorizing a sale of the debtor's interest as of the day of the levy of the attachment might be issued as a sale as of that date seems indispensable in order to give the creditor the full benefit of his lien. But no such execution is authorized and none can be issued unless the courts assume legislative power and authorize it. If, however, such an exe-

Lamont *v.* Cheshire.

cution cannot issue, a court of equity may protect the creditor's lien from the levy of the attachment to the recovery of the judgment.

The plaintiff, having sold on his execution in pursuance of the Revised Statutes, acquired no interest in the property earlier than 31st January.

I am of opinion that in cases in which an attachment is issued, the sale on the execution ought not to have the force and effect of a sale upon the execution provided by the Code, but should have the force and effect of a sale by trustees in cases of attachments against absconding debtors. I am led to this conclusion by two considerations, and these are:

1st. That if, as I have shown, the sale is made in the ordinary way, the creditor loses the benefit of the lien acquired by his attachment, as the sale can only be of the interest the debtor had on the day of docketing the judgment, while the sale by the trustees is the interest of the debtor on the day the attachment was levied. Such a sale fully protects the creditor, and avoids the necessity of a resort to a court of equity to protect and enforce the lien from the levy of the attachment until the docketing of the judgment.

2d. The Revised Statutes reserve to every debtor whose land is sold on execution the right to redeem it for the term of twelve months from the sale.

This right of redemption is a valuable interest in the land and may be seized on an attachment by the debtor's creditors. Now, unless the creditor bids at the sale on the execution the full amount of his debt, he will lose so much as the amount falls short of the debt, and the excess of the value of the premises, over the amount bid, is taken by the attaching creditor.

This case affords a striking illustration of the loss the first attaching creditor may sustain.

Assuming the land to be worth the amount paid for it by the defendant, the debtor had an interest in it of $2,500 over and above the plaintiff's bid; this a subsequent attaching creditor would have been entitled to.

Lamont *v.* Cheshire.

It may be said that it is the fault of the creditor, if he allows the land to be bid off for less than the amount of his debt. But it must be remembered that the bidders at such a sale are bidding entirely in the dark; they cannot know accurately the extent of the claims against it or the amount of litigation they may be compelled to engage in, in order to perfect title to the property. Hence it is that creditors rarely bid the amount of their liens on sales of land on execution. When the sale is without the right of redemption, each bidder is reasonably certain that the title acquired is valid, or, if there are any defects in it, he knows or may know what they are.

It seems to me, therefore, that a special execution should be issued in attachment cases, and that such execution should direct the sale of the debtor's interest in the attached property as of the day of the levy of the attachment.

I am of opinion that the plaintiff acquired no title by the sale under which he claims.

The defendant's counsel insists that as, by § 132 of the Code, subsequent purchasers and incumbrancers are bound by all proceedings in the action taken after the filing of the notice of *lis pendens* to the same extent as if they were parties to the action, the notice is of no force or effect upon the defendant in this action, as the judgment in the action, had he been a party, would not have bound him or affected him in any manner.

I do not think this clause of the section has any application to attachment cases. But the clause of the section that provides that a purchaser or incumbrancer whose conveyance is executed or recorded after filing the notice of *lis penden,* is a subsequent incumbrancer or purchaser, does affect him very seriously.

If the grantee who has not recorded his deed is a purchaser subsequent to the attaching creditor, it necessarily follows that he takes the land subject to the creditor's lien, and that result does not depend upon the event of the action unless the creditor is wholly defeated, but upon the express provision of the statute.

I cannot agree with the counsel that the clause in question conflicts with any provision of the Constitution.

Substantially the same provision is contained in the recording acts, yet no one has ever seriously claimed the legislature had not power to subordinate the rights acquired under an unrecorded deed to those under one that has been recorded, although the former may have been first executed and delivered. The motion for a new trial must be granted, costs to abide event.

