WILLIAM H. CROMWELL, DAVID W. CROMWELL AND ALBERT CROMWELL, APPELLANTS, v. ALBERT GALLUP, AS SHERIFF OF ALBANY COUNTY, RESPONDENT.

*Appointment of an assignee in bankruptcy — avoids an attachment levied within four months.*

Plaintiffs commenced an action against the firm of Jordan & Clark, residents of Boston, but doing business and having personal property in Albany, by service of the summons by publication. January twenty-eighth, 1876, an attachment therein was issued to defendant and a levy was made thereunder. January twenty-ninth, the said firm filed a voluntary petition in bankruptcy, and on the ninth of February were adjudged bankrupts. On March eleventh the creditors filed a petition for a composition, under section 17 of the bankrupt act, and on March thirtieth a resolution accepting the offer of the bankrupts was passed and signed by the requisite number of creditors, and the same was, on April second, duly filed and recorded in the bankruptcy court.

April eleventh, notice was given of a meeting of creditors, to be held on April twenty-first, to elect assignees. This notice was given because of the judge of the bankruptcy court having held that the composition would not dissolve plaintiffs' attachment. On April twenty-first, at a first meeting of creditors held pursuant to notice under a warrant issued therefor, the same committee, appointed by the creditors to see to the fulfillment of the composition, were elected

assignees. On April twenty-second, the composition was ratified and confirmed by the court. The assignees, on April twenty-second, demanded the property, theretofore attached, of the defendant, and thereafter conveyed all the property of the bankrupts to a new firm, the formation of which had been provided for in the composition. On demand of this firm defendant surrendered to it the property. April twentieth plaintiffs had entered judgment in their action and issued an execution to defendant to sell the property levied upon.

In an action by them against defendant for failing to collect the execution, *held*, that the appointment of the assignees being within four months of the issuing of the attachment, avoided it; that the judgment entered bound only what was held under the attachment and fell with it.

That the fact that the composition was assented to before the appointment of the assignees, and was subsequently carried into effect, did not alter the effect of their appointment upon the attachment. (LEARNED, P. J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon a verdict directed by the court.

*Edw. P. Wilder*, for the appellants.

*Nathaniel C. Moak*, for the respondent.

TAPPAN, J. :

APPEAL by the plaintiffs from a judgment in favor of the defendant upon a verdict, entered by direction of the court.

The action was brought against the defendant as sheriff of Albany county for false returns upon two attachments and two executions, issued to him upon judgments in the attachment suits, in favor of the plaintiffs against Thomas B. Jordan & William F. Clark.

There was no dispute about the facts, and at the close of the evidence both parties moved the court to direct a verdict in their favor. The court reserved the case for further consideration, and finally, by consent of the parties, as to the formal regularity of the proceedings, directed a verdict for the defendants as of the day of the trial at the circuit.

The facts which appeared at the trial, chronologically stated, were as follows :

The plaintiffs commenced two suits against said Jordan & Clark, which for convenience of statement may be designated suits Nos. 1 and 2.

On January 28, 1876, defendant as sheriff, as aforesaid, received an attachment in suit No. 1 against said Jordan & Clark, directing him to attach sufficient of their property to satisfy $1,434.40 and costs and expenses, and immediately attached sufficient of their property to do so.

On January 29, 1876, Jordan & Clark filed a petition in bankruptcy in the District Court of Massachusetts, in which William H. Cromwell & Company of New York, plaintiffs firm, were included among the list of creditors for the claim in said action No. 1, and also for the claim in action No. 2 hereinafter mentioned.

On February 1, 1876, the defendant as such sheriff received an attachment in favor of plaintiffs in suit No. 2 against said Jordan & Clark, requiring him to attach sufficient of their property to pay $1,305.14, with interest from December 31, 1875, and costs and expenses, and he immediately attached sufficient of the property, which belonged to said Jordan & Clark on January 28, 1876, and which but for the bankruptcy proceedings would have remained theirs.

On February 4, 1876, proof of residence of the bankrupts was filed in the bankruptcy court, and the matter of the bankruptcy of said Jordan & Clark was referred to a register in the district of Massachusetts, and on February 9, 1876, they were adjudged bankrupts, and the next day such adjudication was filed in the proper court.

On February 16, 1876, the register issued a warrant for the first meeting of creditors for March sixth, next thereafter. On the day last mentioned the register held that the notice given to the creditors of the first meeting was insufficient, and adjourned the meeting to March 30, 1876, and issued a new warrant for that time.

On March 11, 1876, the creditors filed a petition for a composition at fifty per cent under section 17, chapter 390, Laws of the United States (18 U. S. Stat. at Large, 182) to be secured by one or more new partners coming into the firm to bring in at least $50,000 additional capital, upon which said petition the bankruptcy court made an order for a meeting of creditors March 30, 1876, to act upon the proposition for a composition, and that the creditors of said Jordan & Clark be notified of such meeting by

sending to each of said creditors a notice of the substance of the order by mail, postpaid, at least ten days prior to the said day appointed for such meeting.

On March 13, 1876, the clerk of the bankruptcy court returned that he had so served such notice on all the creditors whose names were in the schedule previously filed, which included Cromwell & Company, the plaintiffs herein.

On March 16, 1876, on application of the bankrupts, the said court made an order that their business be continued under the supervision and control of a register in bankruptcy until otherwise ordered.

On March 30, 1876, proofs of debts were made and filed, and the register held that the notice of the first meeting of creditors to choose assignees was insufficient, and adjourned such meeting to April 21, 1876, and issued a new warrant for such a meeting for that time.

On March 30, 1876, the meeting of creditors to determine whether they would accept the proposal for a composition was held, and at such meeting the bankrupts produced a statement claiming to show all of their assets, and the names and addresses of the creditors to whom such debts respectively were due, including Cromwell & Company (plaintiffs) as creditors for the amounts stated in both attachments, with their residences. The requisite number of creditors, holding the requisite amount of debts against the bankrupts, resolved that the composition proposed by the bankrupts should be accepted, and such composition was confirmed by the signatures thereto, of the bankrupts, and two-thirds in number and one-half in value of all the creditors of the bankrupts, the fifty per cent to be paid by the new firm in four installments in four, six, eight and ten months from March 1, 1876 ; the new partners were to furnish and put into the new firm $50,000 in cash. The meeting provided that when H. A. Gowing, Charles B. Barnes and Henry F. Cloe, a committee of the creditors, should certify that this had been done, the property of the bankrupts should be transferred to the new firm.

This meeting then adjourned to March 31, 1876, at which time the register certified to the passage of the proper resolution for the composition and the confirmation thereof by the signature

of the bankrupts, and the requsite number of their creditors, and the same was filed with the register and presented to the court April 1, and recorded April 2, 1876.

On April 1, 1876, the bankruptcy court made an order reciting that the resolution for a composition had been duly passed, and directing notice to be given to all the known creditors of the bankrupts, by mail, at least five days before the time that a hearing would be had on the confirmation and acceptance of the resolution before the court on the 8th of April, 1876.

On the 1st day of April, 1876, the clerk returned that he had so served such notice on all the creditors, including the plaintiffs.

On April eighth, the bankruptcy court ordered that the hearing on such motion be posponed until April 22, 1876.

On April 11, 1876, the aforementioned committee of creditors addressed a printed notice to the plaintiffs, wherein they stated that owing to the attachments on stock of the bankrupts, which Judge LOWELL of the United States Court held would not be dissolved by composition, it would be necessary to hold, first, meeting of creditors and elect assignees ; that such action would not interfere with the completion of the composition at fifty cents, and interest from March first ; that they hoped to have the whole matter closed on April twenty-second.

On April 11, 1876, the marshal returned due publication and service of notice under the warrant for the first meeting of creditors to choose assignees, April 21, 1876, including plaintiffs ; also a copy of the notice served in the usual form on all the creditors, including plaintiffs.

On April 20, 1876, judgment was entered in action No. 1 for $1,621.73 damages and costs. The judgment directed that plaintiffs have execution thereon against the property attached on the 28th day of January, 1876, under the warrant of attachment to him issued and delivered. There was no appearance by the defendants in such action, and service of the summons was made by publication only.

On April 20, 1876, the defendant as sheriff received an execution upon such judgment, directing him to make the amount thereof with interest from the property attached as before men-

tioned. By direction of the plaintiffs' attorney the sheriff levied the execution upon such property.

On April 21, 1876, the first meeting of the creditors in bankruptcy was held under the warrant directing the same ; debts to a large amount were proven, and the creditors elected Henry A. Cowing, Charles H. Barnes and Henry F. Cloe assignees, who accepted the trust, and the register approved and affirmed the choice of such assignees, and conveyed and assigned to them all the estate, real and personal, of the bankrupts, including all property, of whatever kind, of which they were possessed, or in which they were interested or entitled to have on the 29th day of January, 1876, except the property exempt by the provisions of the statute, to have and to hold the same pursuant to the conditions and limitations therein set forth. The same day the register ordered the assignees to give notice of their appointment by the usual publication, for three weeks, in two newspapers.

On April 22, 1876, the assignees served upon the sheriff, the defendant, a copy of the register's assignment and demanded the property ; the defendant replied that he would consult counsel and follow his advice. April 22, 1876, the committee of creditors, appointed at the composition meeting, reported to the court that a partnership had been formed, composed of the above-named Thomas B. Jordan, and William F. Clark, and Rodney McLaughlin, Rufus P. Kingman, Henry K. Keith and Columbus C. Luce, under the firm name of Jordan, Clark & McLaughlin, and that the new partners had paid $50,000 in cash as capital of said partnership. On the same day the court made an order reciting that the cause come on to be heard upon the resolution for composition theretofore presented to the court, and that upon hearing all persons desiring to be heard thereon, it appearing to the court that said resolution was duly passed in the manner directed by the statute, and that the court being satisfied that said resolution was for the best interest of all concerned, it was ordered that the resolution be forthwith recorded, and the statement of the debtors as to their debts and assets presented with said resolution be forthwith filed, with liberty to any person interested to apply to the court at any time for further directions, as provided by law ; such statement was also filed and recorded.

On the 22d of April, 1876, the assignees upon their petition, duly verified, obtained from the District Court of the southern district of New York, where the plaintiffs resided, an order requiring them to show cause on the 29th of April, 1876, why proceedings in these two actions should not be stayed until the determination of the court in bankruptcy on the question of the discharge of the bankrupts, and why the attachments issued in each of said actions should not be vacated and set aside, and the petitioners have such other relief as might be proper, and in the meantime, and until the decision of the motion, staying all proceedings in said actions. Such order, and the petition upon which it was granted, were served upon plaintiffs and they made answer thereto, and upon such petition and such answer a hearing was had May 24, 1876, before said court, when the petition was denied, and the injunction and stay of proceedings vacated and set aside.

On April 28, 1876, the said assignees presented to the bankruptcy court in Massachusetts a petition showing their appointment and that they had qualified ; that the resolution of composition had been proved and complied with, and that on the twenty-second of April the court had approved the same and ordered it and the papers to be recorded and filed, and prayed that an order be made, authorizing and directing the assignees to convey the property assigned to them by the register, in the bankruptcy proceedings, to the said members of the said new firm under the name of Jordan, Clark & McLaughlin, except so much of said property as might be required to pay the expenses of said estate in bankruptcy.

The said court then made an order for the clerk to give notice to the bankrupts, and to all known creditors of said bankrupts, to appear at a court of bankruptcy on the 6th of May, 1876, and show cause, if there was any, why the prayer of such petition should not be granted ; such notice to be given by sending to said creditors by mail, postpaid, a statement of the substance of said petition and order.

On April 29, 1876, the clerk returned that he had duly served said notice as therein directed. On the 6th day of May, 1876, the court ordered that the prayer of the petition be granted, and directed said assignees to convey the property of the bankrupts to

the said new firm, except so much as might be required to pay the expenses of said estate in bankruptcy, and on the same day said assignees made such conveyance to said parties as ordered. About May 15, 1876, the new firm served upon defendant, as sheriff, a copy of such assignment and transfer and demanded a surrender of the property attached, which he, subsequently to May 26, 1876, surrendered to their agent. On May 26, 1876, judgment was entered in action No. 2 for $1,447.36 without appearance or personal service, and said judgment directed execution in the same form as the judgment in action No. 1, and on May 29, 1876, an execution in the same form was issued to defendant and received by him as sheriff. On June 13, 1876, the defendant, as sheriff, returned on the several attachments and executions the foregoing facts, and that by reason thereof he could not make the amounts thereof, or any part thereof. For making such returns this action was brought.

The bankruptcy court in Massachusetts had jurisdiction of the subject-matter, and of the proceedings in bankruptcy. Its orders and determination are binding and conclusive on all parties, until set aside or vacated in that court by direct application for that purpose in *that court*, or upon appeal to the proper circuit court. So long as they stand, having been granted on notice to all parties, including the plaintiffs, they cannot be attacked collaterally. (Bump. on Bankruptcy [9th ed.], 735–736; *Michener* v *Payson*, 13 N. B. R., 49; *S. C.*, 8 Chicago Legal News, 17.)

The decrees of the bankruptcy courts rendered pursuant to the acts of Congress are entitled in every other court to the same force and effect, as the judgments or decrees of any domestic tribunal, so long as they remain unreversed and are not annulled. (*Lamp Chimney Co.* v. *Brass and Copper Co.*, 91 U. S. R., 650; *Shawhan* v. *Wherritt*, 7 How. [U. S.] R., 645; *Huff* v. *Hutchinson*, 14 id., 588; *Parker* v. *Danforth*, 16 Mass., 299; *Peeks* v. *Barnum*, 24 Vt., 76; 2 Smith's Leading Cases [7th ed.], 622, 814; *Palmer* v. *Preston*, 45 Vt., 159; *Miller* v. *U. S.*, 11 Wall., 300; *Hampton* v. *McConnel*, 3 Wheat., 234; *Gelston* v. *Hoyt*, id., 312; *Slocum* v. *Mayberry*, 2 id., 1; *Nations* v. *Johnson*, 24 How. [U. S.], 203; *Webster* v. *Reid*, 11 id., 437.) Such orders and decrees can only be attacked collaterally, when they appear to be void in

form, or that due notice of the petition was never given. (*May* v. *Howe*, 108 Mass., 503; *Ocean Bank* v. *Olcott*, 46 N. Y., 15.) If it appears that the bankruptcy court had jurisdiction, the subsequent proceedings are presumed to be regular, and the decision of that court whether correct or otherwise, upon every question properly arising in the case, is *binding* and *conclusive* until reversed on appeal. (*Smith* v. *Engle*, 14 N. B. R., 481, 484; *S. C.*, 44 Iowa, 265, 268.) Bankruptcy proceedings are *in rem*, and *actual notice* to the creditors is not essential to the jurisdiction of the court. The public notice required by the act will be deemed notice of the proceedings to each creditor and affords sufficient opportunity to make objections to them. (*Shawhan* v. *Wherritt*, 7 How. [U. S.] R., 643.) The plaintiffs attachments were proceedings *in rem*, giving no rights except as against the very property seized and brought within the jurisdiction of the court. The defendants in the judgment could not be sued thereon in the same or in any other State. (*Schwinger* v. *Hickok*, 55 N. Y., 280; *Bartlett* v. *McNeil*, 60 id., 53; *Force* v. *Gower*, 23 How., 294; *Bicknell* v. *Field*, 8 Paige, 400; *Fiske* v. *Anderson*, 33 Barb., 71; *Fitzsimmons* v. *Marks*, 66 id., 333.) And this is so even where the party appeared in the special proceeding for a specific purpose. (*Hoffman* v. *Hoffman*, 46 N. Y., 30; *McDermott* v. *Clary*, 107 Mass., 501.)

In such case the execution is required to be special, and to recite the issuing and levy of the attachment, the recovery of the judgment *based thereon*, and to require the sheriff to sell the *specific property attached* by virtue of the attachment. (Code, § 237; *McKay* v. *Harrower*, 27 Barb. S. C. R., 463; *Lamont* v. *Cheshire*, 6 Lans., 246.) The right to sell the property depended upon the attachment; as soon as that was dissolved, the right to proceed upon the execution fell with the dissolution. (*Lyon* v. *Yates*, 52 Barb. S. C. R., 237; *Kerr* v. *Mount*, 28 N. Y., 659.) And the effect is the same where the attachment is dissolved after judgment. (*Thompson* v. *Culver*, 38 Barb., 442; *Bowen* v. *First National Bank*, 34 How. Pr. R., 408.) If, after the attachment is dissolved, even after judgment and execution, the officer refuses to deliver the property attached to the party entitled thereto, he is liable for such refusal. His assertion that he refused under the

plaintiffs' direction is no defence. (Drake on Attachment [4th ed.], §§ 306, 411.)

The assignment made by the register to the assignees, who had been appointed and qualified, conveyed to such assignees all the estate, real and personal, of the bankrupts, and such assignment related back to the commencement of the proceedings in bankruptcy, and by operation of law vested the title to all such property and estate in the assignees, including the property seized as the property of said Jordan & Clark by the sheriff under the attachments issued out of this court in favor of plaintiffs, and as such attachments had issued within four months next preceding the commencement of the bankruptcy proceedings, such assignment, by operation of law, dissolved such attachments, and such assignees held such property divested of any lien by reason thereof. (U. S. R. S., § 5044, p. 980; *Bracken* v. *Johnston*, 15 N. B. R., 106, 109; *S. C.*, 4 Cent. L. J., 9, 10; 3 Am. L. Times Rep. [N. S.], 537; *Miller* v. *O'Brien*, 9 N. B. R., 26; *King* v. *Loudon*, 14 id., 383; *Kaiser* v. *Richardson*, id., 391–392; *Hatch* v. *Seely*, 13 id., 380; *Zeigler* v. *Shomo*, 78 Penn. St. R., 357, 363; *Miller* v. *Bowles*, 58 N. Y., 253; *Duffield* v. *Horton*, 10 Hun, 140; *Dickerson* v. *Spaulding*, 7 id., 288; *Matter of Broich*, 15 N. B. R., 16; *Jones* v. *Beach*, 1 Mich. N. P., 91; *Morris* v. *First National Bank*, 68 N. Y., 362.) In this case the assignees did not need to intervene in the attachment cases; the attachments were set aside by operation of law. The attachments were the foundation of all the other proceedings taken in the actions instituted by the plaintiffs, and where rendered void by the bankrupt act, all proceedings in such actions became ineffectual to give plaintiffs any lien or right to the property attached. If the plaintiffs had acquired a lien which could not have been extinguished by the bankruptcy proceedings, then either they or the assignees would have had a right to choose the forum in which the lien should be enforced. If the plaintiffs had exercised their right to choose the forum in that case, the assignees would have been compelled to intervene or be bound by the lawful enforcement of the lien. The plaintiffs exercised their rights as creditors of the bankrupts by taking their attachments, without which this court had no jurisdiction to render their judgments *in rem*. They did so with knowl-

edge of the federal statute, enacted by virtue of the authority of the Constitution, by which it was declared that if the bankruptcy proceedings progressed to the appointment of an assignee, their attachments were thereby *per se* dissolved. After the commencement of the bankruptcy proceedings, within four months of the time the attachments issued, they could not, by their own acts, by the entry of the judgment therein pending such proceedings, acquire any additional rights. (*Clark* v. *Rowling*, 3 N. Y., 216; *Dresser* v. *Brooks*, 3 Barb., 430; *Morris* v. *First National Bank*, 68 N. Y., 362.) Plaintiffs were legally bound to take notice of such proceedings. (*Matter of Daniels*, 13 N. B. R., 46; *S. C.*, 8 Chicago Legal News, 17.)

If the composition proceedings had been perfected before the appointment of an assignee, the pending attachments would not have been dissolved, because the state of facts which the statute declared should so operate would never have existed. (*Matter of Clapp*, 14 N. B. R., 191; *Matter of Lytle*, 14 id., 457; *Wield* v. *Boshart*, manuscript opinion by DONOHUE, J.

The composition did not take effect until the court approved the resolution of the creditors providing for the same, and caused the same to be recorded, and the statement of assets and debts to be filed. (18 U. S. Stat. at Large, 183.) Before then, the assignees had been appointed and the register had conveyed to them. By this proceeding, through the assignees, the creditors had acquired the property for the purpose of having the same subjected to the payment of their debts. Such action did not prevent the requisite number of creditors, holding the required amount of debts, from agreeing to a composition with the bankrupts, whereby all the creditors, by consent of part and the compulsory operation of the law, should surrender the property to the new firm, and take in place and stead thereof the notes of such firm for such property in satisfaction of their debts, and it was, without doubt, competent for the bankruptcy court, in pursuance of such composition, to give the bankruptcy proceedings such direction as to preserve the general object and purpose of the act; namely, to give each of the creditors of the bankrupt his ratable share of the avails of such property by directing the assignees, when such composition had been perfected, to convey

the property which they had acquired by the assignment from the register to the new firm.

The composition was not invalid because the payments were to be made in installments, secured by notes of the new firm. (*Matter of Ewing*, 17 N. B. R., 109; *Matter of Reiman*, 11 id., 21.) Irrespective of the election of assignees and the assignment to them by the register, it would seem that the effect of the acceptance of the composition by resolution bound all the creditors whose names and addresses, with the amount of the debts due to them, were shown in the statement of the debtors, produced at the meeting at which the resolution was passed. (18 U. S. Statutes at Large, 182; U. S. Statutes of 1874, chap. 390, § 17.) Plaintiffs' debt was, by these proceedings, barred and extinguished. The attachments and executions depending upon the existence of the indebtedness fell with it. (*Miller* v. *McKenzie*, 43 Md., 404; *Ocean Bank* v. *Olcott*, 46 N. Y., 12, 16; *American Exchange Bank* v. *Brandreth*, 12 Hun, 384; *Wells* v. *Lamprey*, 16 N. B. R., 205, 207; *Claflin* v. *Seessel*, 5 N. Y. W. Dig., 257; *Matter of Bechet*, 12 N. B. R., 201; *Beebe* v. *Pyle*, 5 N. Y. W. Dig., 198.) The proceedings before the District Court of the southern district of New York are not *res adjudicata*, except to bar another summary application for the relief asked in such proceedings.

It is contrary to the policy of the law to allow grave and weighty questions requiring a development of all the facts to be conclusively determined, except in the usual manner, when both parties have an opportunity to present all the facts of the case. (*Van Rensselaer* v. *Sheriff*, 1 Cow., 502; *Pendleton* v. *Weed*, 17 N. Y., 77; *Snyder* v. *White*, 6 How. Pr. R., 321; *Smith* v. *Spalding*, 30 id., 339; *Hoffman* v. *Hoffman*, 46 N. Y., 30; *Simpson* v. *Hart*, 14 J. R., 63; *Belmont* v. *Erie R.*, 52 Barb., 637, 641–642; *Howell* v. *Mills*, 53 N. Y., 323.) The application made by the assignees of the bankrupts was summary; they submitted to the jurisdiction of the court in that proceeding only; submitting to such jurisdiction did not enlarge the character, or effect of such determination when made. The District Court of the southern district of New York was not the court having jurisdiction of the bankruptcy proceedings; that court could only take

control of the property of the bankrupts estate by a suit at law or equity, to which the sheriff was a party, and not by a mere rule. (*Marshall* v. *Knox*, 16 Wall., 551; *Smith* v. *Mason*, 14 id., 419; *Dickerson* v. *Spaulding*, 7 Hun, 288.)

Upon the facts conceded at the trial the new firm, after the transfer to it by the assignees, became entitled to the property which the sheriff had attached by virtue of the plaintiffs attachments issued to him, and to avoid an action which would have accrued in favor of such firm had he refused to deliver the property upon demand, he had the right to deliver the property to the parties thereto entitled. When he did so he assumed the burden of litigating the questions showing such rights in the parties to whom he assumed to surrender the property. (*Lummis* v. *Kasson*, 43 Barb. S. C. R., 373; *Wehle* v. *Conner*, 69 N. Y., 546, reversing same case; 8 J. & Spencer, 31.) Any matter that could have defeated the right of such parties, had they brought suit against the plaintiffs, the latter could give in evidence in this case.

We do not deem it necessary to discuss any other points, as these views dispose of the case. The court below properly directed the verdict. The judgment entered thereon should be affirmed, with costs.

LEARNED, P. J., dissenting.

The point where I am unable to assent to the opinion of my brother TAPPAN is on the composition proceedings. The United States Statute of 1874 added to the forty-third section of the bankrupt act certain provisions, by which the creditors might accept a composition from the debtor. (Stat. at Large, vol. 18, § 17, p. 182.) Such composition, if made and approved, takes the property of the debtor from the control of the court and out from all bankruptcy proceedings. By the terms of the act the composition is binding on all creditors whose names and addresses, and amount of debts, are shown in the statement of the debtor It is to be passed by a majority in number and three-quarters in value of the creditors.

In estimating the value secured, creditors are to be estimated at the amount of their debt above the security. If fully secured, they cannot vote. The composition leaves the security held by

the creditors severally unaffected.   I should have thought that it was a necessary part of every bankruptcy proceeding that the court should divide the bankrupts assets among the creditors; and that a law authorizing three-fourths of the creditors to impose any terms of composition which they might choose on the remaining fourth was no proper part of a bankrupt law.   Nor should I have thought that such a law for voluntary compositions could be brought within a bankrupt system, by being enacted as an amendment to a bankrupt law.   I should not have thought it to be within the power of Congress to enact that three-fourths of a debtor's creditors could fix the terms on which he could be discharged from his liability to the others, without even requiring a surrender of his property.   In the present case, the whole of the bankrupts property was, under this composition, conveyed to other parties, and none of it was applied to the payment of the bankrupts debts.   But the decision in the *Matter of Reiman* (12 Blatch., 562) holds this composition act valid; and even holds that a payment in notes complies with the act, which requires a payment in money.

But, passing this, the composition law excepts debts which are secured, and evidently applies only to unsecured debts.   It is not so unjust as to permit a part of the creditors, by their mere voluntary agreement, to take away from other creditors the security which they have.   It is only the unsecured creditor, or the secured creditor to the extent that his debt exceeds his security, who can join in, and who is affected by, this voluntary agreement. For this composition is a voluntary agreement.   It is a substitute for, not a continuance of, the proceedings in bankruptcy.   (*Mudge* v. *Wilmot*, 124 Mass., 493.)

The creditor who has, by attachment, obtained a lien on his debtors property is a secured creditor.   (*Frost* v. *Mott*, 34 N. Y., 253.)   He has a specific lien.   (*Rinchey* v. *Stryker*, 31 N. Y., 140.)   I see no reason why he is not as much a secured creditor, within the language of this composition act, as if the debtor had given him a mortgage upon the same property.   The fact of security, not the mode in which it was obtained, is the important thing.   And the secured creditor is not affected by the composition, to which he does not consent.   (*In re Lytle*, 14 Nat. B. R., 457.)

This seems to have been admitted in the present case. For it was conceded that the composition would not dissolve the attachment, or discharge the property from the plaintiffs' lien. (*Sage* v. *Heller*, 124 Mass., 213.) After a meeting of creditors had been had, at which the composition proposed was accepted by the requisite number and value of creditors, and approved by the register, a committee of the creditors, favorable to the composition, sent out a circular stating that Judge LOWELL had decided that the composition would not dissolve the attachment; and that it, therefore, became necessary to elect assignees; which proceeding would not interfere with the composition. For the purpose, then, of indirectly accomplishing what the composition act forbade, they proceeded to elect assignees. The assignees were elected one day; the composition agreement was filed the next; a new firm (proposed in the composition agreement) in a few days after applied for the transfer to them by the assignees of all the debtors property; and this was done.

Thus it is apparent that the creditors chose to adopt the plan of voluntary composition, in the place of the distribution of assets by the bankrupt court; and that what was done, by way of appointing assignees, was done simply for the purpose (if possible) of dissolving the attachment, and not in good faith for the distribution of the assets in bankruptcy.

It seems to me that what the statute forbids cannot thus be accomplished by indirection. If the creditors compound, they must, in so compounding, leave the secured debts to remain secured. The act authorizing compounding, in speaking of debts secured, is general. It does not limit its language to debts which had been secured four months or more previously. But it leaves *all* securities undisturbed. And when, therefore, the creditors in this case accepted the composition, they relinquished any effect which the appointment of assignees might otherwise have had. The composition paper was signed before the appointment of the assignees. The proceeding was pending, and was at once completed by the entry in the records.

It may be said that the appointment of the assignees has discharged the attachment, and thus that the lien has gone altogether. But the object of the appointment of the assignees ceased with the

composition ; and, therefore, with the ceasing of their trust, ceased all the powers necessary thereto. The composition superceded the assignees' rights ; and with them those provisions of the act which are a part of the plan of distribution by the assignees. The assignees never claimed from the defendant in this action the property in his hands. The new firm, who did claim the property, were not purchasers from the assignees. It would be idle to call them so. . They merely took the property under the composition deed ; upon the abandonment by the assignees of all their rights, duties and powers. If they had taken *under* the assignees, then the assignees would have received from them the purchase-money of the property, which would have been a fund for distribution. But they took title, not through the assignees, but through the composition deed ; and they cannot claim the benefit of the assignees rights.

I, therefore, think that the judgment should be reversed.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Judgment affirmed, with costs.