CASE 25—PETITION EQUITY—FEBRUARY 3.

# Bell vs. Western River Imp. and Wrecking Co.

APPEAL FROM LOUISVILLE CHANCERY COURT.

The right to retain possession of attached property, and the distinct right to have the attachment absolutely discharged, are incident to every species of attachment authorized by the Civil Code. In a general attachment, possession may be retained upon executing the bond provided by *section* 235, the effect of which is to bind the obligors to have the property forthcoming, subject to the order of the court, for the satisfaction of such judgment as shall be rendered in the action, or, in default thereof, to be answerable for whatever loss might result to the plaintiff in consequence of such default. The bond is to be regarded as a mere obligation for the forthcoming of the property. (2 *Met.,* 209.)

If the defendant desires to obtain a *discharge* of such attachment, and restitution of the property or proceeds, he may do so by giving bond "to the effect that the defendant *shall perform the judgment of the court.*" (*Civil Code, sections* 242, 243, 254, 256.) When this bond is given, it stands in lieu of the attachment, and the action proceeds as if no attachment had ever issued. (2 *Met.,* 447.)

So, in an attachment against a steamboat, under *section* 264 *of the Civil Code*—the bond provided for in *section* 268, is but an obligation for the forthcoming of the property. (*Halbert vs. McCulloch, &c., ante* 456.) The execution of a bond, conditioned to perform the judgment of the court, (*sections* 270, 271,) discharges the attachment, and has the like effect as in cases of general attachments.

In a specific attachment, issued in an action brought to foreclose a mortgage, and enforce the lien upon personal property therein, under *section* 273 *of the Civil Code,* the person in possession, in order to retain it, executed a bond with surety, as prescribed by the judge issuing the order for the attachment, (*section* 276,) conditioned "to pay plaintiffs such sums as may be adjudged to them in the action, or that the attached property shall be forthcoming and subject to the order of the court, for the satisfaction of such judgment as may be rendered, whichever may be directed by the

court." *Held*—that the fair and equitable construction of the covenant is, that the obligors will have the property *forthcoming* subject to the order of the court, for the satisfaction of such judgment as should be rendered in the action, or, in default thereof, to be answerable for whatever loss might result to the plaintiff in consequence of such default.

*Section* 280 *of the Civil Code* authorizes the court, in any of the cases mentioned in *sections* 273 *and* 274, to direct the terms and conditions of the bond to be executed by the defendant with security, *in order to obtain a discharge of the attachment.*

SPEED & BARRET, for appellant, cited 1 *B. Mon.*, 73; *Civil Code, sec.* 276.

C. RIPLEY, on same side, cited 2 *Met.*, 214; *McKee vs. Pope,* 18 *B. Mon.;* 16 *Ib.*, 557; *Civil Code, sections* 273, 274, 276, 280; 1 *B. Mon.*, 73; *Brennan vs. Black,* 5 *Dana.*

G. A. & I. CALDWELL, and WM. ATWOOD, for appellees, cited 2 *Story's Eq. Pleading, sec.* 408, *a; Civil Code, sec.* 800; *Civil Code, sub-div.* 2 *of art.* 3; *Ib., sections* 273, 276, 283, 284, 254, 235, 268, 239, 810; 4 *Bibb,* 336; *Ib.*, 508; *Bustard vs. Gates, &c.,* 4 *Dana.*

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

S. Parker & Son, and J. L. Beeler, owners of the steamboat "Antelope," executed two deeds of trust on the boat to secure two bills of exchange drawn by the owners, and accepted by Brown, the captain of the boat, in favor of the appellees.

The appellees filed their petition in the Louisville chancery court, against the steamboat "Antelope" and owners, and the other parties to the bills of exchange, and deeds of trust, alleging that their debts were unpaid; that the defendants were all non-residents of Kentucky; that the "Antelope" was then within the jurisdiction of the court, but was about to be removed from the State, and they pray for a foreclosure of the deeds of trust, and for an attachment against, and sale of, the boat, and a judgment for their demands.

The chancellor made an order for the attachment, in which it is provided that the "defendants or person in possession may retain possession of the attached property, upon executing, before the marshal, bond with good surety, in the sum of $4,000, *conditioned to pay plaintiffs such sums as may be adjudged to them in the action, or that the attached property shall be forthcoming*

*and subject to the order of the court, for the satisfaction of such judgment as may be rendered, whichever may be directed by the court."*

The attachment was levied on the boat, and Brown, the captain, together, with the appellant, Bell, as his surety, executed a bond in strict conformity with the terms of the order.

It does not appear that process ever issued or was executed on any of the defendants, or that either of them appeared except the trustee, Dickson.

On the final hearing it was adjudged :

1. That the plaintiffs recover of the defendants, J. R. Parker and E. Brown, $2,300, with interest and costs, and also of said J. R. Parker $38 94, and the further sum of $1,175, with interest, costs of protest, &c.

2. That the owners' equity of redemption in the "Antelope" be barred and foreclosed.

3. That the attachment be sustained, and that the steamboat was liable and subject to the payment of the plaintiffs' demands ; and

4. That *Brown and Bell the sureties in the bond returned by the marshal, "be and they are hereby directed and required to pay to plaintiffs" the several demands, with interest, costs, &c., as set forth in the former part of the judgment.*

And, finally, a rule was awarded on said Brown and Bell to pay said sums, with interest, &c., into court, for the satisfaction of the plaintiffs' demands on or before the 7th day of October, next thereafter, or then appear and show cause to the contrary —the judgment having been rendered the 8th of July.

This rule was executed on Bell only, at whose instance it was several times laid over, upon his suggestion that the boat had escaped from the custody of the officer, and that he could have it forthcoming if further time were allowed for that purpose.

Accordingly, on the 28th October, Bell filed a response to the rule, stating, in substance, that he had caused the boat to be placed in the custody of the marshal, and that she was then at the wharf, subject to sale under the decree, and in as good plight and condition as when attached ; that she is worth more,

than the amount of plaintiffs' decree, and that the amount of statutory liens upon her are less than when she was attached; that he had never had any interest in the boat, but entered into the bond as a mere matter of accomodation; that the plaintiffs have been in no way damaged by his executing said bond, nor precluded from any of their rights against the boat and owners, and that an absolute order on him to pay the plaintiffs' debts would be inequitable.

The chancellor overruled Bell's motion, founded on this response, for leave to surrender the boat in discharge of the rule, adjudged the response insufficient, that the rule be made absolute, and that an attachment for contempt, &c., issue against him.

From that order Bell prosecutes this appeal, which of course brings up for revision the original judgment on which the rule and subsequent proceedings were founded.

Waiving the consideration of certain minor objections to the judgment that have been insisted on in argument, we proceed at once to the more important and vital questions presented by the record.

It sufficiently appears, from the facts already stated, that this was simply an action to foreclose a deed of trust, and to enforce the lien of the plaintiffs upon the property therein conveyed. It was an action against defendants, all of whom were alleged to be non-residents, and it became necessary to resort to the provisional remedy authorized by *section* 273 *of the Civil Code,* allowing *specific attachments* against personal property, in the cases enumerated in that and in the next succeeding section.

By *section* 276 it is required, that the plaintiff shall, in every case, give security for the damages to the defendant, in an adequate sum, to be specified in the order granting the attachment, "and, *where it may be proper*, the court or judge may direct that the defendant, or person in possession of the attached property, shall be permitted to retain it, upon giving such bond with security, and for such sum, as the court or judge may prescribe.

It is under *this* section that the bond in this case was given, and not under *section* 280, which authorizes the court, in any of the cases mentioned in *sections* 273 *and* 274, to direct the terms and conditions of the bond to be executed by the defendant, with security *in order to obtain a discharge of the attachment*. And without keeping in view the difference between these two provisions, and without discriminating between the very different objects intended to be accomplished by each, it will be impossible to give proper effect to the different bonds which would be appropriate to each. The right to retain possession of attached property, and the distinct right to have the attachment absolutely discharged, are incident to every species of attachment authorized by the Code.

In the article regulating general attachments it is provided, that the sheriff may deliver the attached property to the person in possession upon the execution of a bond to the effect "that the defendant shall perform the judgment of the court in the action, or that the property or its value shall be forthcoming and subject to the order of the court for the satisfaction of such judgment." (*Section* 235.) But if the defendant desires to obtain a *discharge* of the attachment, and restitution of the property or proceeds, he may do so by giving bond "to the effect that the defendant *shall perform the judgment of the court*" (*secs.* 242, 243.) See also *secs.* 254, 256.

So in proceedings against steamboats to enforce their liability, by statute, for the removal of a slave, or to enforce a lien for the wages of its officers, &c., under *section* 264, the sheriff may deliver the boat attached, to the master or person in charge, on the execution of a bond to the plaintiff "to the effect that the obligors will pay to the plaintiff *such sums of money as may be adjudged to him in the action, or that the boat or vessel shall be forthcoming and subject to the order of the court for the satisfaction of such judgment as may be rendered therein—whichever shall be directed by the court.*" (*Section* 268.)

But if the defendant or owner of the boat may wish to obtain a *discharge* of the attachment, and restitution of the boat, he may do so by executing to the plaintiff a bond sufficient for the sum for which the attachment was granted, "to the effect

Bell vs. Western River Imp. and Wrecking Co.

that *the defendant shall perform the judgment of the court.*" (*Secs.* 270, 271.)

And, as has been already shown, in the class of cases embracing the one we are considering, the same distinct privileges are allowed to the defendant or person in possession—to retain the possession temporarily, by giving the appropriate bond ; *or* to have a *discharge* of the attachment by giving the bond appropriate to that object. The only difference is, that in the two former classes of cases the terms and conditions of the bonds are prescribed by the law. In the latter the bonds are to be prescribed by the court or judge granting the attachment.

Now we need not stop to comment at length upon the important and obvious distinction intended to be made between a mere permission to retain the possession of attached property, and an order discharging the attachment. In the one case the lien created by the attachment, and the power of the court over the attached property, subsist and continue as effectually for all purposes, as if no bond had been given, or the possession of the property had never passed out of the hands of the officer. In the other case, the lien is absolutely extinguished, and all power of the court or its officers over the attached property ceases, and the plaintiff can look only to the bond for his indemnity. (*Hazelrigg vs. Donaldson,* 2 *Met. Ky. Rep.,* 447.) In the former case the bonds required to be given are to be regarded as mere obligations for the forthcoming of the property ; they have been so held by this court, and are so designated by the law itself. (*Section* 283.) In the other case, the bonds, as prescribed by the Code, stipulate absolutely and unconditionally that the defendant shall perform the judgment of the court in the action.

Upon the facts presented by the petition and affidavits of the plaintiffs, the chancellor correctly deemed it a case in which it was proper that the party in possession of the steamboat should be allowed to retain the possession, and in his order prescribed the exact form of bond which the law itself prescribes in identically the same state of case but in reference to a different subject. (*Section* 268, *supra.*)

Bell vs. Western River Imp. and Wrecking Co.

Did then the execution of this bond by the appellant, considering its stipulations in connection with the character and objects of the action, and with a rational and just interpretation of the statutes referred to, subject him to the liability imposed upon him by the judgment under revision? We think not.

In the case of *Halbert vs. McCulloch, &c.*, (*Summer term*, 1861, *ante*, 456,) which was a case very similar to the present, and in which the construction and effect of a similar bond was determined, it is said that "the expression used in this section—*'whichever shall be directed by the court'*—must not be understood as conferring upon the court an unlimited and arbitrary discretion, *either* to render a judgment in favor of the plaintiff for such sum as he may show himself entitled to recover in the action, and then to require the obligors in the bond to pay that sum, *or* to order the forthcoming of the boat or vessel, subject to the order of the court for the satisfaction of such sum. According to that construction the claimant of the boat or vessel could in no case entitle himself to retain the possession of his property, by executing the bond which was intended to secure that very privilege, without thereby rendering himself liable for whatever sum the plaintiff in the action might show himself entitled to recover against the defendant. As was said in the case just cited, (*Schwein vs. Sims, &c.*, 2 *Met. Ky. Rep.*, 209,) such an interpretation of the obligation would result inevitably in the sacrifice of the property of one, to the payment of the debts of another.

"In this, as in all other classes of cases, it is the duty of the court to render such judgment as will protect the rights of all the parties according to the facts as they appear. Here the effort of the plaintiffs was to enforce their lien against the boat in contest. It turns out that the equity of redemption of the mortgagors was all that could properly be subjected to their demand,"—and it was held that the forthcoming of the boat might have been ordered, and for a failure on the part of the obligors to comply with that order they should have been held liable to the extent of the value of the equity of redemption.

We still adhere to this conclusion, and need add but little to demonstrate its correctness.

It is insisted that the judgment as rendered is consistent with the literal import of the bond, and that for that reason the appellant cannot complain. In the case of *Schwein vs. Sims, &c., supra*, the same effect was sought to be given to the plain language of the bond, but a construction more equitable and more in conformity with the objects and policy of the statute under which it was given, was adopted by this court. And the propriety of that construction was forcibly illustrated by an exposition of the monstrous injustice that would result from the literal construction contended for. So in the case before us similar illustrations might be multiplied without limit. Suppose that Brown, the captain of the boat, and in possession of it at the time the attachment was levied, had been no party to the bills of exchange, and being desirous to retain the possession of the property, had given the bond as required, and it had turned out that the boat was not subject to the mortgage lien, but that the plaintiffs were entitled to a personal judgment for the debts sued for, and had recovered such judgment, would the obligors in the bond have been liable for the amount of such judgment? On the literal construction contended for they certainly would. But is it not equally certain that no such result was intended or contemplated by the makers of these statutes?

By the terms of the judgment, as has been stated, the attachment against the steamboat was sustained, and the boat was adjudged liable and subject to payment of the plaintiffs' demands. Why then was it not subjected, and a sale of the property ordered? The record furnishes no sufficient answer to this question. But if it could be assumed that the boat was not then under the control or within the jurisdiction of the court, it is shown, in the response of the appellant, that the boat was, at the date of the response, at the wharf, subject to sale under the decree, and in as good plight and condition as when attached. This response should have been deemed sufficient, showing as it did a readiness on the part of the appellant to comply with his covenant, which, as has been shown,

bound him to have the boat forthcoming, subject to the order of the court, for the satisfaction of such judgment as should have been rendered in the action, or in default thereof, to be answerable for whatever loss might result to the plaintiff, in consequence of such default. This, we think, is the fair and equitable construction of the covenant, in view of the statutes which authorize its execution, and which define in unmistakable terms the objects to be accomplished by it.

It follows that the judgment, and the order of the chancellor making the rule absolute, were erroneous, and they are therefore reversed, and the cause remanded for further proceedings in conformity with this opinion.