ROBERT W. SMITH *vs.* MUTUAL LIFE INSURANCE COMPANY OF
NEW YORK.

This court will not entertain jurisdiction of a bill in equity brought by a citizen of Alabama,
who has never lived here, against an incorporated mutual life insurance company of New
York, seeking to restore him to his rights under a policy issued by the defendants in New
York upon his life, he having failed to pay the premiums required by the terms of the
policy; although the defendants transact business in this commonwealth, and have ap-
pointed an agent resident here upon whom all lawful processes against the company may
be served, under Gen. Sts. c. 58, § 68.

BILL IN EQUITY brought by a citizen of Mobile, Alabama,
alleging, 1. That the defendants, a corporation established under
the laws of the state of New York, on the 6th of March 1848
made a policy of life insurance upon his life, a copy of which
was annexed. [The policy was dated at New York, and de-
scribed the plaintiff as of Mobile.]

2. That by the terms of said policy the defendants promised
and agreed to and with the plaintiff, in consideration of the sum
of one hundred and seventy dollars in hand paid by him, and
the further sum of one hundred and seventy dollars, to be paid
on the sixth day of March and September in each and every year,
until his decease, well and truly to pay or cause to be paid to
him, his executors, administrators or assigns, the sum of ten
thousand dollars, sixty days after due notice and proof of his
death.

3. That it was further agreed by the terms of said policy that, in
case the semi-annual payments or premiums should not be paid
upon the days thereinbefore mentioned for the payment thereof,
then and in every such case the defendants should not be liable
to the payment of the sum insured, or any part thereof; and the
said policy should cease and determine.

4. That it was further agreed by the terms of said policy that
in every case where the said policy should cease and determine
all previous payments should be forfeited to the defendants.

5. That the defendants had, at the time the said policy was
made, an agent in the city of Mobile aforesaid, to wit: Thomas

W. McCoy, duly authorized by them to receive the said semi-annual payments or premiums due from the plaintiff by the terms of said policy, and in their name to give a valid receipt for the same.

6. That the plaintiff complied, in all respects, with the terms of said policy, and paid or caused to be paid to said defendants the semi-annual payments or premiums of one hundred and seventy dollars, upon the sixth day of March and September, in each and every year, from and after the sixth day of March, 1848, until the sixth day of March 1862, inclusive, and took from them the said receipts for the same.

7. That he did not thereafter pay the aforesaid semi-annual payment or premium, because he was advised that such payments or premiums, if made to the said Thomas W. McCoy during the then existing insurrection, would not be acknowledged by the defendants. But the plaintiff averred that he had no agency or part in bringing on the insurrection aforesaid, and did not bear arms against the United States during its continuance, nor aid or abet the enemies of the United States, and is not in any manner responsible therefor.

8. That after the removal of the prohibition of intercourse hereinafter more particularly mentioned, the plaintiff used due diligence to apply, and did apply, to the said company, at its place of business in the city of New York, to receive from him whatever of the said semi-annual payments or premiums might be found in arrears, together with interest thereon; and was then and there ready and willing to do and perform whatever in equity and good conscience he was bound to do and perform, for the preservation or restitution of rights under the said policy; but the defendants wholly refused to entertain any such proposal, and denied that he had any rights whatsoever, either legal or equitable; and pretended that the said policy was forfeited by the non-payment of premium on the sixth day of March 1862, or at some other time or times unknown to the plaintiff, and that the agency of McCoy was revoked by them on or about the        day of        1861.

But the plaintiff charged the contrary of said pretences to be

true, and especially denied all notice of any such revocation, and averred that he dealt with the said McCoy as such agent in good faith.

And the plaintiff further charged that on the 16th day of August 1861, pursuant to authority in that behalf conferred upon him by an act of congress approved July 13, 1861, the President of the United States did, by his proclamation of that date, declare that the inhabitants of certain enumerated states, including Alabama, were in a state of insurrection against the United States; that all commercial intercourse between Alabama and the inhabitants thereof and the citizens of other states was and would remain unlawful until such insurrection should have ceased, or been suppressed; and that all goods, chattels, wares and merchandise coming from Alabama into other parts of the United States, without the special license and permission of the president, would be forfeited to the United States.

And the plaintiff further charged that such restrictions and prohibitions and liabilities to forfeiture did in fact continue until the 22d day of May 1865; and that he is advised that until the proclamation of the President of the United States, issued on the       day of       1866, the inhabitants of Alabama could have no standing in this court.

And so the plaintiff said that any other compliance than as aforesaid with the terms and conditions of the said policy was, without any act or default of his own, suspended by force of the laws of the United States; and that it is contrary to equity and good conscience that a forfeiture of his valuable rights should be worked thereby.

The prayer was that all rights of the plaintiff under his said policy might be decreed to be valid and subsisting, and not lost by forfeiture or otherwise, he being ready and willing and offering to pay to the defendants all such sums of money, with interest thereon, as might appear to be justly and equitably due from him; and for other relief.

The above bill was served upon the general agent of the defendants resident in this commonwealth, upon whom, by Gen. Sts. *c.* 58, § 68, all lawful processes against them may be served ·

and they appeared specially, and moved that the process be quashed, the service thereof annulled, and the bill dismissed, for want of jurisdiction over them. The question whether the court could entertain jurisdiction was reserved, by *Gray,* J., for the determination of the whole court.

*B. R. Curtis,* for the plaintiff.

*A. W. Bradford* (of New York) *& R. H. Dana, Jr.,* for the defendants.

WELLS, J. The question of jurisdiction relates, not only to the parties, but also to the subject matter of the suit. Story Confl. L. § 586. *Bissell* v. *Briggs,* 9 Mass. 462.

In the present case it does not merely regard the powers of the court, but rather the extent of the state authority which underlies those powers. It is in the nature of a question of sovereignty.

The parties are a non-resident plaintiff against a foreign corporation. The defendant is not only non-resident, but incapable even of a temporary presence within the jurisdiction, otherwise than by representation.

The subject matter of the suit is not a present demand capable of enforcement and seeking satisfaction out of property or rights within the jurisdiction. Upon the plaintiff's bill, it appears that there is not even an existing contract between the parties. The proceeding is based upon a past relation, growing out of a contract made without the jurisdiction, which, by its own terms, has ceased to be operative. The plaintiff seeks, through the equity powers of this court, not only to revive his contract as an executory obligation, but also, as incident thereto, to reinstate himself as a member of the defendant corporation.

A corporation, being a mere creature of local statutes, can, of right, have no existence nor recognition beyond the limits of the state wherein it is established. By comity such artificial persons are permitted to contract and to sue in other states. If they avail themselves of that comity, to sue or to make contracts in another state, they may become liable to its jurisdiction to the extent to which they have thus voluntarily subjected themselves. If they have property or rights within the limits of

another state, suits can be maintained and judgments enforced against them, to the extent of such property and rights ; but this results from the authority of the state over whatever is within its limits, and not from any jurisdiction over the corporation itself. The judgment is operative only to the extent of such property and rights. As to these it is analogous in its effects to a proceeding *in rem.* *Bissell* v. *Briggs,* 9 Mass. 462. *Blackstone Manuf. Co.* v. *Blackstone,* 13 Gray, 488.

The more extended jurisdiction sought to be exercised in this case must stand, if at all, upon the provisions of the Gen. Sts. *c.* 58, § 68.

The purpose of that statute, and of the accompanying sections, was manifestly to secure to our own citizens the benefit and protection of our own laws and tribunals, so far as practicable, in their contracts with insurance companies located elsewhere, but which avail themselves of the comity extended to them to prosecute their business within the limits of this state, through their agents here. The statute must therefore be construed with reference to this apparent object. Whether, in order to make it applicable in any case, the concurrent facts of residence of the party, and a contract made or property or life insured within the state, or either of these facts, would be absolutely requisite, we need not now determine. In the case of the *Lafayette Ins. Co.* v. *French,* 18 How. 404, the court, in sustaining the jurisdiction of the state court under a similar statute in Ohio, seem to regard the facts that the contract was made in Ohio, with a citizen of that state, and to insure property situated there, as of importance in giving to that state the right to exercise such authority over a corporation established in Indiana. But assuming, for the purposes of the present case, that the statute is available to all plaintiffs — non-residents as well as residents — and for all liabilities wherever contracted, and that it would give jurisdiction for a valid judgment for the amount due upon a policy actually in force as a contract, it would still fail to afford ground for exercise of the jurisdiction which the plaintiff's bill requires.

The statute contains no provision except for the service of

process. It does not touch the question of jurisdiction otherwise. It does not assume, nor attempt to confer upon the court, nor require the foreign corporation to concede, any right to exercise authority over the organization, the corporate functions, the by-laws, nor the relations between the corporation and its members ; nor to determine the rights and obligations of the corporation or its members, arising under the law of its creation, and depending on such local law. The requirements of the statute are fully answered, in respect to proceedings in the courts, when the corporation appears as defendant, and waives all question as to due service of process. The foreign corporation will not thereby stand differently in court from any other party who has appeared to defend without objecting to the jurisdiction over the person of the defendant. He may still plead a want of jurisdiction on the ground that the subject matter of the suit, or the remedy sought, is beyond the reach of the court, or not within the sovereign power of the state from which the court has its authority.

The provision that process may be served on the agent of the foreign corporation " with like effect as if the company existed in this state " accompanied by the stipulation that such service " shall be of the same force and validity as if served on said company," cannot transfer to the tribunals of this state any power which would not be acquired by the mere fact of actual service, or waiver of service, upon the defendant. It cannot obliterate the fact, nor change the consequences that result from the fact, of the non-resident character of the defendant. Such service upon a citizen of another state, casually or temporarily within the reach of process, does not ordinarily subject all his relations, rights and obligations to the cognizance of the courts of the state in which he happens to be found ; but only such as have arisen therein, and such as are in their nature personal or transitory. His debts due upon contracts, and his liability to damages for personal torts, under laws of general recognition, are of this transitory nature, and may be enforced wherever the person of the defendant can be found. All contracts carry with them the law of the place where they were made, to govern

their interpretation and effect. In suits upon contracts made and causes of action arising elsewhere, the courts thus do, indeed, to some extent, administer the laws of other states. But in such cases the proceedings are only incidentally affected by them ; they do not depend upon such foreign laws. The rights and liabilities of parties under local laws do not always follow them into other jurisdictions. Many of those rights and liabilities, particularly under our federal system of government, are clearly beyond the reach of the sovereignty of another state. Others are of such local concern, and so affect local administration only, or depend upon local statute law, that the tribunals of other states may and ought properly to refuse to exercise any jurisdiction in regard to them. It certainly would not be within the power of the state to subject a foreign corporation to the operation of its own insolvency laws; nor to authorize its courts to administer upon it the insolvency laws of the state of its location. And an agreement, in accordance with a statute requiring it, to submit, through its agent here, to all processes requisite for that purpose, would not give validity to such proceedings, even if our laws of insolvency were adapted to the case of a foreign corporation.

Actual service of trustee process upon a non-resident party is held not to subject such party to the jurisdiction of the court for the purpose of charging the property or funds in his hands. *Tingley* v. *Bateman*, 10 Mass. 343. *Ray* v. *Underwood*, 3 Pick. 302. *Hart* v. *Anthony*, 15 Pick. 445. *Danforth* v. *Penny*, 3 Met. 564. *Gold* v. *Housatonic Railroad*, 1 Gray, 424.

Liabilities growing out of usury laws, and other penal statutes, although in the nature of private and personal claims, will not support an action in other jurisdictions than that within which they arise. *Gale* v. *Eastman*, 7 Met. 14.

A trust will not be enforced here, if it arise under a will proved only abroad or in another state, although the parties are all subject to the jurisdiction of the court, and the trust relate exclusively to personal property. *Campbell* v. *Sheldon*, 13 Pick. 8. *Campbell* v. *Wallace*, 10 Gray, 162.

No proceeding at law nor in equity will lie to enforce the

individual liability for corporate debts imposed upon officers or stockholders by the laws of another state in which the corporation is established.   *Erickson* v. *Nesmith*, 4 Allen, 233.   *Halsey* v. *McLean*, 12 Allen, 438.

A bill in equity will not be maintained, although jurisdiction is acquired by attachment of funds in the hands of a trustee, within the state, where the object of the bill is to compel a foreign corporation to declare and pay a preferred dividend due to parties here, the payment of which is guaranteed by the corporation.   *Williston* v. *Michigan Southern & Northern Indiana Railroad*, 13 Allen, 400.

In the opinion of this court, the present suit falls within the range of this class of cases.  ·Jurisdiction of the person alone, obtained by service of process, or rather by acknowledgment of service, does not warrant the court in assuming authority over the subject matter in reference to which the relief is sought.   See Story Confl. L. § 543.

But aside from the question of power depending on the right of jurisdiction, we regard it as within the province of this court, sitting as a court of equity, in its discretion, to decline to exercise jurisdiction in such cases ; referring parties to the tribunals of the state upon whose laws their relations and rights peculiarly depend, and where alone they can be effectually and properly administered.   This course is especially appropriate in the case of a foreign corporation, when the proceeding is such as not merely to affect its external relations, but also to involve its organic laws, which are necessarily local, and require local administration.   We do not undertake at this time to define the limits of the power which the court may or ought to exercise in the case of a contract by a foreign corporation made within this state, with a citizen thereof, and insuring a life or property therein.   The present case lacks every one of these three elements of jurisdiction; and, further than this, the plaintiff's bill seeks, by a judgment of this court, to establish the artificial relation of membership in a foreign corporation, involving neces sarily the peculiar local statute laws of another state.

*Bill dismissed with costs.*