NATIONAL BANK OF COMMERCE *vs.* CHARLES W. HUNTINGTON & trustee.

Suffolk. Nov. 17, 1879. — Sept. 27, 1880. MORTON & SOULE, JJ., absent.

A railroad corporation, created by the laws of another State, which has an office in this Commonwealth for the convenience of its stockholders and for the better management of its finances and other business, where its principal officers are to be found, and where it carries on such business as is usually carried on in the office of the president and treasurer of a railroad corporation, has a usual place of business in this Commonwealth, within the meaning of the St. of 1870, c. 194, and may be summoned as trustee by process served upon its treasurer.

TRUSTEE PROCESS. Writ dated March 25, 1878. The Little Rock and Fort Smith Railway, summoned as trustee by an

attested copy of the writ being served upon its treasurer, appeared specially, and filed an answer in abatement, alleging that it was a corporation created by the laws of the State of Arkansas for the purpose of owning and maintaining a railroad entirely within the limits of that State, and had no legal existence or domicil out of that State; that, in accordance with the laws of that State, a majority of its directors were residents and citizens of that State, and the offices of its president, secretary and treasurer were there established; that its usual places of business were in the city of Little Rock, and upon the line of said railroad in said State; that a large majority of the stockholders of said corporation resided in the Eastern States, and four of the directors and the president and secretary were citizens of Massachusetts; that, for the convenience and accommodation of such directors, officers and stockholders, the corporation had an office or room in the city of Boston in this Commonwealth, at which office or room returns of the operations of its railroad and of the sales of its lands were received from its officers in Arkansas, also letters, reports and communications, and payment made of the interest upon the bonds issued by said railway, transfers of shares of stock received and transmitted to the offices of the corporation at Little Rock, and certificates of stock issued, but the transfer office of said company with the books pertaining thereto was established and kept at Little Rock, as required by the laws of the State of Arkansas; that it had no usual place of business in Boston, or within this Commonwealth, except as above stated; that it had no property within this Commonwealth, except the usual and ordinary furniture pertaining to an office or room of the nature above described; that it had no legal existence in this Commonwealth, nor usual place of business therein; and that no sufficient and legal service of the writ had been made upon said corporation.

The case was heard before *Endicott*, J., and reported upon certain facts, which appear in the opinion, for the consideration of the full court, upon the question whether the corporation could be summoned as trustee in this Commonwealth. If it could, the trustee was to be ordered to answer over; otherwise, to be discharged.

*S. W. Bates*, for the trustee.

*J. B. Warner*, for the plaintiff.

ENDICOTT, J. The principal question to be determined in this case is whether the Little Rock and Fort Smith Railway, a corporation established by the laws of the State of Arkansas, has a usual place of business in this Commonwealth, and can be summoned by the plaintiff as trustee.

It was held, in an early case, that a person residing in another State could not be summoned as trustee, although service of process was made upon him in this Commonwealth. *Tingley* v. *Bateman*, 10 Mass. 343. *Ray* v. *Underwood*, 3 Pick. 302. *Nye* v. *Liscombe*, 21 Pick. 263. *Hart* v. *Anthony*, 15 Pick. 445. Corporations within the Commonwealth could not be summoned as trustees, until the passage of the St. of 1832, c. 164 and it has been held, following the cases above cited, that this statute has no application to foreign corporations, although the principal officers of such a corporation resided here, and the corporation had leased property, and had agents here to manage its affairs. *Danforth* v. *Penny*, 3 Met. 564. *Gold* v. *Housatonic Railroad*, 1 Gray, 424. *Larkin* v. *Wilson*, 106 Mass. 120. It may also be observed that a foreign corporation, having property in this State, may be sued here, and its property is subject to attachment, in like manner as residents of other States may be sued, and their property here attached, although the corporation is not found in the State, and has no agent or usual place of business here. St. 1839, c. 158. Gen. Sts. c. 68, § 15. And it was decided in *Andrews* v. *Michigan Central Railroad*, 99 Mass. 534, that service on the treasurer of the defendant, at its office in Boston, was not sufficient, and, as there was no attachment of property, the action was dismissed. The question does not seem to have been distinctly considered in that case, whether a corporation, having a usual place of business here for the transaction of its business, may be treated as found here, and therefore liable to suit in our courts. There has been no change in this statute.

In this condition of the law, the Legislature amended the Gen. Sts. c. 142, § 1, by providing that non-residents and corporations established by the laws of another State may be summoned as trustees, if they have a usual place of business in this

Commonwealth. St. 1870, c. 194. Thus far our courts have taken jurisdiction in actions at law against foreign corporations only when an attachment has been made of their property found in this Commonwealth. See *Silloway* v. *Columbia Ins. Co.* 8 Gray, 199. And such corporations can only be summoned as trustees when they have a usual place of business here.

Upon a careful examination of the facts found by the report, we are of opinion that the Little Rock and Fort Smith Railway has a usual place of business in Massachusetts. By the laws of Arkansas, a majority of its directors must be resident therein, and the offices of its president, secretary and treasurer shall be established within the State, and the books and records of its proceedings shall be kept at such office, and be open to the inspection of its stockholders. The Constitution of that State also requires that every railroad company shall maintain an office in the State, where transfers of its stock shall be made, and books shall be kept, showing the amount of capital stock paid in, the amount owned by each stockholder, transfers of stock, the names of its officers and their places of residence. The report finds that the company has complied with all these provisions. It has its principal office in Arkansas, at Little Rock. It also has an office in Boston, occupied by its president and treasurer, and a clerk, all of whom are residents in Massachusetts, and the furniture in the office is the property of the company. This office consists of two rooms ; upon the door of one is the sign, " Little Rock and Fort Smith Railway, Horace B. Wilbur, Treasurer," and on the door of the other, " Little Rock and Fort Smith Railway, President's Office ; " and all the official correspondence of the treasurer is dated at the office of the Little Rock and Fort Smith Railway, 150 Devonshire Street, Boston. At this office the treasurer performs all his official duties. He has been treasurer since 1875, but since 1876 he has not been in Arkansas. The company has a bank account in Boston ; and nearly all its bonds and other securities are kept in Boston, excepting notes received for sales of land, and certain contracts, which are kept in Little Rock. All its net earnings are forwarded to the Boston office, by the subordinate officers at Little Rock ; daily reports of its earnings, and of its sales of lands, and statements, from time to time, of the money received and expended in the operation

of the road, and on account of construction, are also transmit
ted to Boston, and are open to the inspection of the stock-
holders, a large majority of whom reside in the Eastern States.
Certificates of stock are issued and transfers made at the Boston
office, but such issues and transfers are sent to Little Rock, and
also recorded there.   In Boston, also, the bonds and coupons of
the company are payable, and promissory notes and certificates
are exchanged for certain of its coupons.   In the usual course of
business, payment to the defendant for his legal services to the
company would be made at Boston or at Little Rock.   Some
books are kept at Little Rock, relating to the affairs of the com-
pany, which are not duplicated in Boston, but no books are kept
in Boston which are not duplicated in Little Rock.

It is evident from these facts, that this company, for the con-
venience of its stockholders, and for the better management of
its finances and other business, has established an office in Bos-
ton, where its principal officers are to be found, through whom
the subordinate officers in Arkansas are directed and controlled;
and where it carries on such business as is usually carried on in
the office of the president and treasurer of a railroad corporation.
We know of no reason why a foreign corporation may not do
this; and it was not contended at the argument that the com-
pany had no power to establish and maintain in Boston such an
office.   While it exists under the laws of Arkansas, it may transact
business and have places of business elsewhere, unless prohibited
by its charter or by local laws.   *Lafayette Ins. Co.* v. *French*, 18
How. 404.   *Ex parte Schollenberger*, 96 U. S. 369.   *Hayden* v.
*Androscoggin Mills*, 1 Fed. Rep. 93.   *Newby* v. *Von Oppen*, L. R.
7 Q. B. 293.   *Carron Iron Co.* v. *Maclaren*, 5 H. L. Cas. 416, 459.
*Moulin* v. *Trenton Ins. Co.* 4 Zabr. 222.   *Phillipsburgh Bank* v.
*Lackawanna Railroad*, 3 Dutch. 206.   *Libbey* v. *Hodgdon*, 9 N. H.
394.   *March* v. *Eastern Railroad*, 40 N. H. 548.   *Selma, Rome
& Dalton Railroad* v. *Tyson*, 48 Ga. 351.   *Farnsworth* v. *Terre
Haute, Alton & St. Louis Railroad*, 29 Misso. 75.   *Lawrence*
v. *Ballou*, 50 Cal. 258.   *Western Union Telegraph* v. *Pleasants*,
46 Ala. 641.   See also *Rhodes* v. *Salem Turnpike*, 98 Mass. 95.
We can therefore have no question that the company's place of
business in Boston is a usual place of business in this Common-
wealth, within the meaning of the St. of 1870, *c.* 194.

Some other objections to holding this company as trustee have been urged in argument, and remain to be considered.

The language of the statute is broad and unqualified, and we do not consider that it was the intention of the Legislature to confine its application to those foreign corporations which under our statutes have an agent appointed to receive service.

Nor is there any difficulty about service. By the St. of 1870, *c.* 194, the word "corporation" in the Gen. Sts. *c.* 142, § 1, shall include corporations established under the laws of other States, and having usual places of business within this Commonwealth; and the necessary implication is that service may be had upon them, in the manner prescribed in § 5 for service upon those who may be summoned as trustees under § 1; that is, as provided in the Gen. Sts. *c.* 123, § 30. In the case at bar, the service was made upon the treasurer of the company, who was an officer having charge of its business in Boston.

There is no doubt that a State may prohibit foreign corporations from transacting business within its limits, or it may permit them to do so, upon such proper terms and conditions as it may prescribe. It is clearly to be implied from the statute that a foreign corporation may have a usual place for the transaction of its business within this Commonwealth; and it is equally clear that, in exercising such privilege, it is subject to the provision of this statute, and is liable to be summoned as trustee. It was said by Mr. Justice Wells, in *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, that "a corporation which seeks, by its agents, to establish a domicil of business in a State other than that of its creation, must take that domicil, as individuals are always understood to do, subject to the responsibilities and burdens imposed by the laws which it finds in force there." And in *Lafayette Ins. Co.* v. *French*, 18 How. 404, Mr. Justice Curtis, after referring to the general doctrine, that a State may impose conditions upon such corporations as it allows to transact business within its limits, remarks, "and these conditions must be deemed valid and effectual by other States, and by this court, provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural

justice which forbids condemnation without opportunity for defence."

If a corporation may be sued in a State where it has a usual place of business, or where it has property subject to attachment, there is no reason why it may not be summoned as trustee; and if such trustee is charged, we must presume that the judgment will protect it in other States as well as in Massachusetts, if it should hereafter be sued by the creditor for whom it is summoned as trustee. *Hull* v. *Blake*, 13 Mass. 153. *Parker* v. *Danforth*, 16 Mass. 299. *Barrow* v. *West*, 23 Pick. 270. *Ocean Ins. Co.* v. *Portsmouth Railway*, 3 Met. 420. A trustee process pending in one State has been held a good defence to a subsequent action brought in another jurisdiction, by the defendant in the first suit, against his debtor, the trustee. *Embree* v. *Hanna*, 5 Johns. 101. So a subsequent trustee process in one State cannot defeat an action previously commenced against the trustee by his creditor in another State. *Wallace* v. *M'Connell*, 13 Pet. 136. And it was said in the last case, "If the attachment had been conducted to a conclusion, and the money recovered of the defendant before the present suit, there can be no doubt that it might have been set up as a payment upon the note in question." See also *Whipple* v. *Robbins*, 97 Mass. 107. *American Bank* v. *Rollins*, 99 Mass. 313. We cannot presume that the trustee in this case, if charged, will fail to comply with the judgment of the court, and it is unnecessary now to consider in what manner the judgment could be enforced, if the trustee fails to pay it.

It is also contended that the St. of 1870 undertakes to extend the trustee process beyond the system previously existing; and as the trustee could not be sued in our courts on the ground that it had a usual place of business here, but could only be held if it had property here liable to attachment, therefore the plaintiff would have greater rights against the trustee than the defendant has, which would be inconsistent with the general rule applicable to trustee process. But this rule is subject to many exceptions. *Comstock* v. *Farnum*, 2 Mass. 96. *Clark* v. *Brown*, 14 Mass. 271. *Hooper* v. *Hills*, 9 Pick. 435. *Whitney* v. *Munroe*, 19 Maine, 42. Admitting that the creditor of a foreign corporation can obtain jurisdiction over it, under our law, only by an attachment of its property here, yet it is within

the power of the Legislature to subject a foreign corporation to trustee process in another manner, and to provide that it may be summoned as trustee of its creditor, in an action against its creditor, if it has a usual place of business in this Commonwealth. In either aspect, the courts have jurisdiction over foreign corporations. In the case at bar, the trustee could have been sued by the defendant here, for the facts find that, when this action was brought, it had property within this Commonwealth; and we cannot say that his remedy would not have been as complete against the trustee as the plaintiff can have in this case.

*Trustee to answer.*