Kellogg, J.
The only issue made in this case is that made by to affirmative defense set forth in the answer. All the allegations of the complaint are admitted, but this defendant, by way of plea in abatement, alleges in substance that certain creditors of this plaintiff residing in the state of Massachusetts have, by trustee process or attachment, in that state attached the claim here sued upon. To this affirmative defense the plaintiff demurs on the ground that the defense as alleged is insufficient in law upon the face thereof.
To dispose of this issue it may be sufficient to call attention to the single allegation in the complaint, to wit: “ That defendant agreed to pay * * * within sixty days after notice and its receipt of the usual proofs of loss,” and the allegation of the answer that the attachment in Massachusetts was issued and served upon defendant “before any proof of loss had been received by defendant from plaintiff.”
*310 Upon the face of this statement it is clear that nothing was due or owing, at the time of such service, from defendant to plaintiff, nor was there at such time any claim liquidated or adjusted, and under no general public law could any such attachment attach anything. If there is any special statute of Massachusetts which could create a lien in such a case, it should have been in substance alleged so that the court could see how far it was inconsistent with the general public law, and how far it was intended to extend.
Upon this ground alone I am of opinion that the demurrer should be sustained.
There are, however, other grounds, and the most important and the one which impresses me as conclusive and final and disposes of all merits of this defense, however concisely it may be alleged, is this, that there is nothing in the state of ■ Massachusetts upon which the attaching creditors at any time can levy or obtain a lien by any compulsory process against this defendant
The defense relies upon the principle expressed in Embree v. Hanna, 5 Johns., 101, as the foundation of its contention, and claims that this principle has been applied in other states to cover completely the case before us, and refers to Barr v. King, 96 Penn., 485; National Bank v. Huntington, 129 Mass., 444.
The principle in Embree v. Hanna, as expressed in the opinion of Chief Justice Kent, went so far as to declare that a debt owing by an individual debtor residing in a sister state might be attached, if the laws of that state so declared, by a creditor of his creditor residing in this state, even though the creditor of such foreign debtor had no notice of such attachment, and no opportunity to defend; and that such attachment might subsequently be pleaded in abatement of a suit brought in this state by the creditor against such debtor, provided always that such attachment were served before the action was brought here. He says, “ The principle will support a idea”in abatement of an attachment pending and commenced prior to the present suit," and he adds the familiar expression, “ Qui prior est tempore potior est jure," for “ we may reasonably presume that if the priority of the attachment in Maryland be ascertained, the courts in that state would not suffer that proceeding to be defeated.”
This principle has been somewhat limited by the declaration of the general term of this district expressed in Martin v. The Central Vt. R. R. Co., 50 Hun, 347; 20 St. Rep., 375, but only so far as to limit its application to cases where the creditor has reasonable notice and opportunity to defend. When the individual debtor resides in another state any creditor of his creditor may attach such debt, if the laws of that state so declare, and such laws provide that reasonable notice is given to the creditors so that the provisions of the Constitution of the United States touching the deprivation by a state of the liberty or property of a person, except by due process of law, is complied with.
This proceeds upon the theory that so far as the debt of any resident in a state is concerned the legislature of that state may declare the situs of such claim, for the purpose of attachment, etc., to be the residence of the debtor.
*311 This is so declared by Andrews, J., in Plimpton v. Bigelow, 93 N. Y., 596, in this language:
“ That the fundamental principle upon which all attachment proceedings rest, that the res must be actually or constructively within the jurisdiction of the court issuing the attachment in order to any valid or effectual seizure under the process. In the case of tangible property, capable of actual manucaption, it must have an actual situs within the jurisdiction. But credits, choses in action and other intangible interests are made by statute susceptible of seizure by attachment. The same principle applies, however, in this case as in the other ; the res, that is the intangible right or interest, to be subject to the attachment must be within the jurisdiction. But it is manifest- from the nature of this species of property that it must be a constructive or statutory presence only, founded upon some characteristic fact which determines its locality.”
The application of this principle expressed in Embree v. Hanna, as modified by Martin v. Vt. C. R. R. Co., taken in connection with the fundamental principles expressed above by Andrews, J., in Plimpton v. Bigelow, do not carry us to the extent of admitting that the defendant here can avail himself of any such defense. This defendant does not stand in the position of a debtor residing in the State of Massachusetts. It is a domestic corporation organized under the laws of, the State of Hew York, “ having dts domicil and residence alone within the bounds of the sovereignty which created it, and is incapable of passing personally beyond that jurisdiction."
The “ abstract entity,” the corporation, possesses a credit, an intangible right or interest, belonging to the plaintiff in this action ; and while with the permission of other states this corporation may send agents into other states and do business there, or own property there, it would be wholly inconsistent with the declaration, that it is incapable of passing personally beyond the bounds of the sovereignty which created it, to say that it is capable, without the consent or aid of the plaintiff, of carrying this credit, this intangible right or interest, belonging to the plaintiff beyond such bounds. This intangible right or interest must of necessity remain with the corporation, and is never, constructively or otherwise, in the possession of an agent. If this were not so,, and it were possible to conceive that any agent of this “ entity,” this corporation, outside the bounds of the sovereignty which created it, could in fact possess this intangible fight or interest, it would be interesting to know which of its agents possess it, and in how many of the states' of this union it is so possessed at one.- and the same time.
It must be taken to the state of Massachusetts before it can be -there subject to the jurisdiction of that state. “ The principle found in the codes of all enlightened nations is that jurisdiction, to be rightfully exercised, must be founded upon the presence of the person or thing in respect to which the jurisdiction is exerted within the.territory.” To say that it is possible for a legislature to enact that because an agent of this stable entity is within its *312 borders this intangible interest or right which is inseparable from the corporate body is also there, is simply to say that the legislature may enact that any other species of property actually in the state of New York is also within the jurisdiction of Massachusetts for the purpose of appropriation or taxation or otherwise.
I am aware of the holding in cases cited and before referred to as Barr v. King and Nat’l B’k v. Huntington, but the doctrine declared in those cases has never been approved, in this state. Justice Andrews, in Plimpton v. Bigelow, refers to these cases, but not with approval. He says, “We do not enter into this question here.” And in the- light of what this learned justice does say in that case and hold to be the true principle for decision of the matters involved in that case, it is very difficult to sec how it can ever be held in this state that a corporation may send by it's agent, to places where it cannot itself go, these intangible rights and interests to subject them to a foreign jurisdiction. In theory it seems impossible, and-in practice, if such practice were permissible, considering the vast affairs of this class of corporations and the territory covered by their agents, confined to no one hemisphere even, the peril and burden attending the citizen of the state where such corporation is domiciled would be incalculable:
That a legislature may enact that for protection of it's citizens a foreign insurance company shall name some person in the state upon whom process may be served is reasonable. That the corporation touching any matters of controversy between it and any individual may be called by proxy into the courts.of the state where it so does business is also reasonable. But the legislature cannot transport the corporation itself into its' jurisdiction; no more can it transport there the intangible interests and rights inseparable from the body corporate and as firmly fixed as the immovable domicil itself.
If anything were lacking in the case of Plimpton v. Bigelow by way of application. of the principle there so- well reasoned to a case exactly like this, it is fully supplied by Justice Daniels in Straus v. The Chicago G. Co., 46 Hun, 217; 11 St. Rep., 359.
Demurrer sustained.