J. A. SIMMS *et al. v.* P. H. GARRETT *et al.*

(No. 7681)

Submitted July 26, 1933.    Decided August 3, 1933.

(Rehearing denied September 5, 1933)

*Simms & Simms,* for relators.

*Blue, Dayton & Campbell* and *Dillon, Mahan & White* and *W. G. Thompson,* for respondents.

KENNA, JUDGE:

The relators herein show by their petition that they are the duly elected and qualified officers and directors of Lambie Oil Company, a corporation created under the laws of the State of Wyoming; that the respondents formerly were such officers and directors and that respondents wrongfully withhold from the relators the possession and control of the books, records and funds of the corporation; that a majority of the stock of the corporation is owned by citizens of West Virginia and that all the respondents are domiciled here and all of the books, records and funds of the corporation are situated in West Virginia. Upon this showing, a rule in mandamus was awarded. The return and answer denies on behalf of respondents that the relators are in fact the duly elected officers and directors of the corporation. It sets up the fact that the Lambie Oil Company is a foreign corporation not admitted to do business in the State of West Virginia. In addition to raising the issue as to the title to offices of directors, president, vice-president and secretary-treasurer, by the return and answer, the respondents, by demurrer and by plea in abatement, question the jurisdiction of this court to decide that issue and to that extent regulate the internal affairs of a foreign corporation. The respondents, in their return and answer, aver that the relators claim to be entitled to the offices of directors, president, vice-president and secretary-treasurer of the com-

pany by virtue of a pretended election held in the State of Wyoming on the 5th day of June, 1933, and assign reasons which they contend show the invalidity of such election. They aver that because of such invalidity they, who were theretofore regularly elected directors and officers of the Lambie Oil Company, hold their offices under the by-laws until their successors are regularly elected and qualified and that because there have been no regularly elected and qualified successors to them, they are lawfully entitled to the possession and control of the books, records and funds of the corporation. Thus the regularity of the election of the relators as claimed in the petition is brought directly in issue and is the single question for decision, provided that the jurisdictional question is decided in favor of the petitioners' position.

There were 595 shares of the common stock of Lambie Oil Company issued and outstanding at the time of the election under which relators claim. All of this stock was entitled to vote at that election. Three hundred twenty-three and one-half shares of the total outstanding capital stock had on the 27th day of October, 1931, been placed in a voting trust by the owners thereof by an agreement entered into in the State of West Virginia. The trustees were C. B. Early, R. M. Lambie and J. A. Simms. The agreement places the voting control of this stock in the majority of the trustees and provides further that the trustees or any one or more of them shall have the right to present for decision any question concerning the control of the stock to the *cestuis que* trust under the agreement. The operation and effect under the laws of the State of Wyoming of this voting trust agreement will, in view of the circumstances hereinafter set out, determine the validity of the election held in the State of Wyoming on the 5th day of June, 1933.

On the 25th day of May, 1933, upon a bill exhibited against him and others in the circuit court of Kanawha County by substantially the same persons who are relators here, C. B. Early was temporarily enjoined and inhibited from acting as trustee in the voting trust agreement in carrying out the provisions thereof and particularly in participating in the election of directors at the meeting of June 5, 1933. This left R. M. Lambie and J. A. Simms in control of the stock under the vot-

ing trust agreement. Lambie attended the meeting in Wyoming in his capacity as president of the company. Simms also attended. When the meeting convened, Lambie protested its validity and caused the minutes to show that he and Simms were in disagreement as to how the stock under the voting trust agreement should be voted, that it was impossible for them to act together in a manner that would enable the stock to be voted and that, therefore, the 162½ shares outside the voting trust which attended in person and by proxy were not sufficient to constitute a quorum and that consequently no valid meeting of the stockholders could be held. Countering this proposition, Simms took the position that even in the absence of Early, who was enjoined, inasmuch as he and Lambie were physically present at the meeting, the stock in the voting trust was present for the purpose of being counted on the question of a quorum and that even with himself and Lambie deadlocked on the question of how the stock should be voted, he, Simms, by virtue of the policy of the State of West Virginia as indicated by the provisions of section 73, article 1, chapter 31 of the Code of West Virginia of 1931, was entitled to cast the vote of one-half of the 323½ shares in the voting trust, which together with the 162½ shares, otherwise in attendance in person and by proxy, constituted a quorum of the total outstanding capital stock of the company. Lambie then withdrew from the meeting and participated no further therein.

The meeting proceeded, resulting in the election of relators as the directors of the company. They later met and elected officers.

If the operation and effect of section 73, article 1, chapter 31 of the West Virginia Code of 1931 are as Simms contends, then we would be imposing the policy of West Virginia as to the operation of voting trusts upon a Wyoming corporation. An examination of this section, however, discloses in the first place that by its express terms it applies to ''corporations of this state'', i. e., West Virginia. It is hard to see how this corporation, chartered under the laws of Wyoming and not admitted to do business in the State of West Virginia, could fall within that category. But, further, the section, again by its express terms, is to be applied only where ''the right

and method of voting any stock standing in their names (the trustees) at any meeting of the corporation are not fixed by the agreement appointing said trustees, * * *.'' In this instance, the right and method of voting the stock under the voting trust agreement not only is fixed in a majority of the trustees, but it is further provided that any question of disagreement among the trustees may be submitted for decision to the *cestuis que* trust. In the absence of the application of this statute, it is difficult to see how one out of three trustees could cast the vote of any part of the stock in the voting trust where the instrument creating that trust contains no provisions which would authorize or permit such a procedure, not to mention the difficulty of applying a West Virginia statute to the internal affairs of a corporation neither domiciled nor admitted to do business in this state.

A further difficulty rises under the construction of the Wyoming statute, the terms of which govern the election of the directors of Wyoming corporations.

Section 117 of chapter 28 of the Wyoming Revised Statutes of 1931 controls the election of directors of Wyoming corporations. The provisions of that section contain the following language: ''* * * the election shall be made by such of the stockholders as shall attend for that purpose, either in person or by proxy, provided a majority of the stock is represented; * * * .'' So far as we have been able to ascertain, there are no further statutory provisions nor decided cases of the State of Wyoming that throw light upon the application of this provision. It would seem to make it clear that a majority of the stock of the corporation would have to be cast for the election of directors before the election would be valid. Without the vote of at least a part of the stock of the voting trust cast in the election of the directors of the Lambie Oil Company at the meeting of June 5, 1933, the vote of a majority of the stock of the corporation would not have been cast and the election of relators under the terms of this Wyoming statute would apparently be invalid. In order, therefore, to determine the validity of that election, this court would be required to construe the provision of the Wyoming statute directing the election of directors to be made by ''such of the stockholders as shall attend for that purpose''. Lambie contends that he did

not attend the meeting for the purpose of acting as trustee nor for the purpose of casting the vote of any of the stock of the voting trust in the election. He says that he was there in his capacity as president of the company and that, seeing that there could not be a majority of the outstanding stock of the corporation represented at the meeting, he protested its validity immediately upon the meeting being convened. The relators, on the other hand, state that inasmuch as a majority of the trustees were present at the convening of the meeting, without regard as to why they attended, they could not thereafter, *without cause,* withdraw and break a quorum. With certain qualifications, this may be a sound general rule, but what are we to say of its applicability under this Wyoming statute? There may be room to say that the Wyoming statute contemplates exactly the situation that Lambie was in: that is, stock in attendance generally, but not for the purpose of electing directors, is not to be counted in arriving at the majority of the stock required to make an election valid.

There seems to be conflict in the decided cases as to whether jurisdiction exists to regulate the internal affairs of a foreign corporation. The better rule appears to be that the jurisdiction does in fact exist, but its exercise is determined by the consideration of whether or not, under the circumstances that may be shown in a specific instance, the questions involved are more properly determinable by the courts of the corporation's domicile. *Wason v. Buzzell,* 181 Mass. 338, 63 N. E. 909; *Butler v. Standard Milk Flour Co.,* 131 N. Y. Supp. 451; *Rogers v. Guaranty Trust Co.,* 288 U. S. 123, 77 L. Ed. 652. See also *Smith v. Mutual Life Insurance Co.,* 96 Mass. (14 Allen) 336. There are many considerations in this case that would impel us to exercise jurisdiction. The books and records of the company are in this State. Its directors and officers, no matter which group should be decided to be in control of its affairs, are citizens and residents of this state. Its funds are here. Acting upon these considerations alone, we undoubtedly would be justified in exercising jurisdiction. However, the foregoing discussion of the questions which arise in determining the validity of the stockholders' meeting and election of directors in the State of Wyoming on June 5, 1933, shows beyond cavil that the determining questions arise under the application of

Wyoming laws, that they are of serious import, and that they have never been decided by the Wyoming courts.

We are therefore of the opinion that under all of the circumstances of the case before us, the propriety of our assuming jurisdiction is open to very serious question, to say the least, and that the Wyoming courts are clearly indicated as the best tribunal for its decision.

We therefore, while affirming the existence of the jurisdiction, decline to exercise it under the circumstances of this case and dismiss the petition, refusing to award the writ of mandamus.

*Writ denied.*